DAVID ROWSON, PLAINTIFF-RESPONDENT,

v.

TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MANTUA,
DEFENDANT-APPELLANT,

AND

JOSEPH J. HOFFMAN, GLOUCESTER COUNTY CLERK.

Superior Court of New Jersey
Appellate Division

Argued October 3, 1979—Decided October 15, 1979.

Before Judges CRANE, MILMED and KING.

*Mr. J. Robert McGroarty* argued the cause for appellant.

*Mr. Louis P. Sampoli* argued the cause for respondent.

No appearance for Joseph J. Hoffman, Gloucester County Clerk.

The opinion of the court was delivered by

KING, J. A. D.

This is a taxpayer's suit brought to challenge the action of the township committee in placing the following question on the ballot for the next general election:

( ) YES ( ) NO   With the understanding that only the users of the water and sewer systems provided by the Mantua Township Municipal Utilities Authority would pay for the assets of those systems, shall the Mantua Township Municipal Utilities Authority purchase the assets of the Mantua Water Company, the Sewell Water Company, the Edenwood Water Company, the Edenwood Sewerage Company, and the Buckingham Utilities Company, Inc. for a total cost of $2,270,000.00, and finance said acquisition by a loan from the Farmers Home Administration, payable over 40 years at interest of 5% per annum, and as well construct a million gallon storage tank and install a distribution system to effectively connect the lines of Sewell and Mantua Water Companies and Edenwood Water Company, and finance the new construction by a combination of a grant and loan from the Farmers Home Administration in the approximate amount of $2,730,000 to be comprised of the maximum amount of grant monies procurable, and the balance being loan monies repayable over 40 years at interest at 5% per annum?

*N.J.S.A.* 19:37–1 permits a governing body which "desires to ascertain the sentiment of the legal voters . . . upon any question or policy pertaining to the government or internal affairs" of the municipality to adopt a resolution placing a pertinent referendum question on the ballot. The result of the referendum is in no sense binding on the governing body. It is not to be "taken or construed as other than an expression of sentiment by the voters to be followed or disregarded by the governing body in its discretion." *N.J.S.A.* 19:37–4.

Plaintiff contended successfully in the trial court that because the Township Committee had no power to act with respect to

the proposed acquisition of the five private water companies and the sewer construction contemplated by the question, it had no right to place the question on the ballot. Concededly, power to perform the activities contemplated by the question resides principally with the Mantua Township Municipal Utilities Authority (MUA), a body created pursuant to the Municipal and County Utilities Authority Law, *N.J.S.A.* 40:14B–1 *et seq.* For the specific powers of an MUA, see *N.J.S.A.* 40:14B–20. But as demonstrated below, the MUA's power to act is not exclusive.

Prior expressions of this court on the power of a governing body to place a question on the ballot pursuant to *N.J.S.A.* 19:37–1 are found in *Santoro v. South Plainfield,* 57 *N.J.Super.* 498 (App.Div.1959), and *Botkin v. Westwood,* 52 *N.J.Super.* 416 (App.Div.1958), app.dism. 28 *N.J.* 218 (1958). In *Botkin* plaintiff successfully attacked the placement of a question on the ballot by a local governing body concerning deconsolidation of school districts. This court there observed that New Jersey boards of education are essentially independent governmental units "separate, distinct and free from the control of municipal governing bod[ies]." *Id.* at 425. Board members are elected in special elections; school taxes are separately levied. This court ruled in *Botkin* that this referendum question on school district deconsolidation "constitute[d] a prohibited intrusion . . . in school district affairs by a body which has no business intermeddling with them in the slightest degree except as the legislature has permitted." *Id.* at 431. We concluded there that the voters' sentiment could only be sought in matters concerning which the inquiring body "has the power to act." *Id.* at 433.

In *Santoro* the local governing body had created a sewer authority under the applicable statute. *N.J.S.A.* 40:14A–1 *et seq.* The governing body requested the county clerk to place a referendum question on the ballot inquiring whether (1) the sewer authority or (2) the mayor and council of the borough should proceed with and undertake the "planning, financing and installation of sanitary sewers." This court concluded that the

borough had "no authority to do anything" related to the questions, stating: "[i]f the municipality has no power to act it has no right to seek the voter's advice whether to do so." *Santoro*, above at 502.

The Mantua Township MUA is a separate body created by resolution of the township committee which appoints the MUA's members for fixed terms. *N.J.S.A.* 40:14B–4(a). However, because of the provisions of *N.J.S.A.* 40:14B–24(a) and (b) we perceive a significant distinction between the situation before us, the school district in *Botkin* and the sewer authority in *Santoro*.

*N.J.S.A.* 40:14B–24 reads in full:

a. Any local unit shall have power, in the discretion of its governing body to appropriate moneys for the purposes of the municipal authority, and to loan or donate such moneys to the municipal authority in such installments and upon such terms as may be agreed upon between such local unit and the municipal authority.

b. Subject to section 61 of this act (C. 40:14B–60), [not herein pertinent] any local unit shall have the power to authorize as a general improvement or, in the case of a local unit which is a municipality, as a local improvement the construction and financing of any facilities for the collection, treatment and disposal of sewage or for the collection recycling or disposal of solid waste within the district arising within a district, or any facilities for the distribution of water within a district. Subject to the consent and approval of the municipal authority, such facilities may be operated by the local unit and the local unit may fix rates and charges for the use thereof, in addition to the payment of any special assessments levied by a municipality against lands and real estate specially benefited by such improvements. As provided in section 48 of this act (C. 40:14B–48), such facilities may be acquired and operated by the municipal authority as a part of the utility system, notwithstanding that special assessments may be or may have been levied for such improvements by a municipality.

"Local unit" includes any municipality which has created a municipal authority. *N.J.S.A.* 40:14B–3(7). Subsection (a) was in the original legislation. *L.*1957, *c.* 183, p. 653. Subsection (b)

was adopted by amendment in 1970. *L.*1970, *c.* 209, § 3.[1] The Introductory Statement to the 1970 amendatory legislation is revealing to our present inquiry. It says:

> The purpose of this bill is to authorize municipalities and counties, with the consent and approval of sewerage and municipal utilities authorities created by them, to engage in cooperative efforts relating to the construction, extension and enlargement of facilities to be operated by such authorities and to validate such actions heretofore taken in these regards.

> While the cooperative efforts authorized by this act have heretofore been widely exercised and thought to have been authorized by law, the Superior Court, Appellate Division, held in the case of *Darrah v. The Township of Evesham,* decided July 7, 1970 [111 *N.J.Super.* 62, 267 A.2d 70], that certain such actions were not authorized. This bill is designed to overcome the decision in that case and to validate actions heretofore taken by many counties and municipalities with their respective authorities.

*N.J.S.A.* 40:14B–24 clearly authorizes a substantial degree of cooperation and mutual effort between an MUA and a governing body not contemplated in the *Botkin* (school district) or *Santoro* (sewer authority) instances. Where the municipality has the power to engage in substantial financial commitment to and physical cooperation with an MUA, if it so desires, we do not think it unreasonable for it to attempt a test of the voters' sentiment and thereby gauge the public's response to a proposed community undertaking of significant magnitude. Indeed, it is not difficult to conclude that a governing body's financial support and other cooperation may, in certain instances, "make or break" an MUA's development and growth. By pertinent example, in the present case in December 1977 the township by resolution and written agreement guaranteed notes of the MUA totaling $515,000—obviously a cooperative gesture which enhanced the MUA's borrowing ability.

---

[1] By parallel amendment the Legislature gave the same additional powers to sewer authorities. *L.*1970, *c.* 209, § 1; *N.J.S.A.* 40:14A–9.

We conclude that the legitimate powers of the township to act with respect to the activities of the MUA conferred by *N.J.S.A.* 40:14B–24(a) and (b) generate a sufficient "question or policy pertaining to the [its] government or internal affairs" under *N.J.S.A.* 19:37–1 to allow the placement of the referendum question relating to the MUA's proposed substantial acquisitions and expansion on the ballot.

Reversed.