THE BOARD OF CHOSEN FREEHOLDERS OF MERCER COUNTY,
PLAINTIFF–RESPONDENT, AND CITIZENS AUTO REVOLT,
PLAINTIFF–INTERVENOR–RESPONDENT, v. BARRY SZAF-
ERMAN, COUNTY COUNSEL OF MERCER COUNTY AND DI-
RECTOR OF THE DEPARTMENT OF LAW OF MERCER COUN-
TY, DEFENDANT–RESPONDENT, AND AMERICAN INSUR-
ANCE ASSOCIATION; NATIONAL ASSOCIATION OF INDE-
PENDENT INSURERS; INDEPENDENT INSURANCE AGENTS
OF NEW JERSEY, INC., AND CHARLES S. STULTS, III, DE-
FENDANTS–INTERVENORS–APPELLANTS.

Submitted September 19, 1989—Decided September 22, 1989.

*Michael J. Herbert* submitted a brief on behalf of appellants (*Hannoch Weisman,* attorneys; *Michael J. Herbert,* and *Elmer M. Matthews,* of counsel; *Michael J. Herbert, Elmer M. Matthews,* and *Susan Stryker,* on the brief).

*Robert S. Kline,* Assistant County Counsel, submitted a letter on behalf of respondent Barry Szaferman, etc., relying on the brief submitted on behalf of appellants (*Barry D. Szaferman,* Mercer County Counsel, attorney).

*Richard M. Altman* submitted a brief on behalf of respondent Citizens Auto Revolt (*Pellettieri, Rabstein and Altman,* attorneys; *Richard M. Altman,* of counsel; *Richard M. Altman* and *Anne P. McHugh,* on the brief).

*James R. Coley, Jr.,* submitted a letter in lieu of brief on behalf of respondent The Board of Chosen Freeholders of Mercer County.

*Michael J. Ferrara* submitted a letter in lieu of brief on behalf of intervenor Board of Chosen Freeholders of Bergen County.

*Linda G. Rosenzweig,* County Counsel, submitted a brief on behalf of the intervenor Board of Chosen Freeholders of Camden County.

*H. Curtis Meanor,* Acting County Counsel, submitted an affidavit on behalf of intervenor Board of Chosen Freeholders of Essex County.

*Bruce C. Hasbrouck,* First Assistant County Counsel, submitted a letter brief on behalf of intervenor Board of Chosen Freeholders of Gloucester County.

*Charles M. Schimenti* submitted a letter brief on behalf of intervenor Board of Chosen Freeholders of Hudson County.

*John J. Hoagland,* County Counsel, submitted a letter brief on behalf of intervenor Board of Chosen Freeholders of Middlesex County.

*Michael H. Glovin,* Assistant County Counsel, submitted a letter brief on behalf of intervenor Board of Chosen Freeholders of Passaic County (*Raymond P. Vivino,* County Counsel, attorney).

*Daniel A. Zehner,* submitted letter briefs on behalf of the intervenor Board of Chosen Freeholders of Salem County.

*Jeremiah D. O'Dwyer,* County Counsel, submitted a letter brief on behalf of the intervenor Board of Chosen Freeholders of Union County.

PER CURIAM.

The issue on this appeal is whether a non-binding county referendum question concerning automobile-insurance regulation, proposed for inclusion on the forthcoming general-election ballot by plaintiff, the Board of Chosen Freeholders of Mercer County (and by the Boards of Freeholders of every other county), is authorized by *N.J.S.A.* 19:37–1 to be included on the ballot for submission to the voters. We hold that the proposed referendum question is not one pertaining to the "government or internal affairs" of a county and therefore must be excluded from the ballot.

I.

This action for declaratory relief was instituted by the Board of Chosen Freeholders of Mercer County (plaintiff or Freeholders) to determine the validity of the following proposed referendum question (the CAR referendum):

Shall the Mercer County Board of Chosen Freeholders adopt a resolution advising the legislature to roll back auto insurance rates by 20%, except to the extent that the resulting rate would be inadequate for an optimally efficient company; to abolish the JUA and the RMEC surcharge and replace them with a system enabling any driver meeting objective good driver criteria to buy insurance from the company of his choice, to establish an assigned risk plan solely for drivers who do not meet such criteria, and to require insurers to base

their rates solely on objective, risk-related criteria; to require the insurance industry to pay off the JUA deficit to the maximum extent permitted by the United States and New Jersey Constitutions; to repeal New Jersey's anti-trust exemption for the insurance industry, its anti-rebate law and its anti-group laws; and to establish a computerized auto insurance price-information system and a voluntary, non-profit consumer-operated corporation funded solely by its members to intervene before the insurance department.

Defendant Mercer County Counsel, acting pursuant to the County's Administrative Code, refused to approve a resolution of the Freeholders directing the referendum question to be placed on the ballot, concluding that the proposed question was not authorized by *N.J.S.A.* 19:37–1. Plaintiff-intervenor, Citizens Auto Revolt (CAR), obtained leave to intervene as a representative of New Jersey motorists seeking to place the CAR referendum question on the general election ballot in all twenty-one counties.

The Law Division granted the Freeholders' motion for summary judgment, emphasizing that the object of the referendum question was to determine voter sentiment on whether the Freeholders should adopt a resolution "advising the legislature" to take the action specified in the question. Observing that the Freeholders obviously possessed the authority to "advise" the legislature on the subject matter of the referendum, the court concluded that "if the legislature adheres [to] or follows the advice of the Freeholders * * * there will be significant impact on the County Government and its internal affairs." Accordingly, the Law Division sustained the validity of the CAR referendum.

After the County Counsel determined that he would not appeal the Law Division's decision, defendants-intervenors, American Insurance Association (AIA), National Association of Independent Insurers (NAII), Independent Insurance Agents of New Jersey, Inc. (IIA), and Charles Stults, III (defendants-intervenors), obtained leave to intervene in order to appeal the Law Division's ruling. The grant of intervention was based substantially on the public interest in the issue being litigated.

The Appellate Division expedited consideration of the appeal, and, after argument, affirmed the judgment of the Law Division by a divided court. The majority observed that "insurance costs constitute a pervasive item in county and local budgets," and concluded that there was a "rational and sufficient nexus between the question proposed by the referendum and the function and role of county government." The dissenting member concluded that the referendum question was unauthorized because the regulation of insurance is outside the sphere of county government.

Defendants-intervenors appealed to this Court as of right. *R.* 2:2–1(a)(2). Pending final disposition of the appeal, we issued an interim order staying the printing of ballots containing the CAR referendum question or one substantially similar thereto in all counties, on notice to the Attorney General and to the county clerks and boards of chosen freeholders of each county, granting all parties served with notice the opportunity to file briefs in this appeal. *Cf. R.* 4:28–4(a) and (d) (requiring notice to and authorizing intervention by governmental subdivision not party to action questioning validity of ordinance, regulation, or franchise thereof). In response to the Court's order, briefs or affidavits supporting the inclusion of the CAR referendum question on the general-election ballot have been submitted on behalf of the following counties: Bergen, Camden, Essex, Gloucester, Hudson, Middlesex, Passaic, Salem, and Union. In view of the time constraints involved in the printing of general-election ballots, we decide the case without oral argument. *R.* 2:11–1(b). We have, of course, reviewed the entire record, including the transcript of the oral argument in the Law Division, the briefs submitted in the Law Division and the Appellate Division, and the briefs submitted to this Court.

## II.

*N.J.S.A.* 19:37–1 provides:

When the governing body of any municipality or of any county desires to ascertain the sentiment of the legal voters of the municipality or county *upon*

*any question or policy pertaining to the government or internal affairs thereof,* and there is no other statute by which the sentiment can be ascertained by the submission of such question to a vote of the electors in the municipality or county at any election to be held therein, the governing body may adopt at any regular meeting an ordinance or a resolution requesting the clerk of the county to print upon the official ballots to be used at the next ensuing general election a certain proposition to be formulated and expressed in the ordinance or resolution in concise form. Such request shall be filed with the clerk of the county not later than 74 days previous to the election. (Emphasis added.)

The parties acknowledge that the validity of the referendum question depends on whether it is one "pertaining to the government or internal affairs" of the county. Our analysis of this critical statutory phrase is illuminated by cases that have considered its application in different but related contexts.

■■ In *Botkin v. Mayor and Borough Council of Westwood,* 52 *N.J.Super.* 416 (App.Div.), appeal dismissed, 28 *N.J.* 218 (1958), the Borough of Westwood sought to include on the general-election ballot the following non-binding question: "Should any action be considered to effect a deconsolidation of the Consolidated School District of Westwood and Washington Township?" 52 *N.J.Super.* at 422. The referendum was challenged under *N.J.S.A.* 19:37–1 on the basis that the consolidated school district was a completely independent local government unit, and hence the subject matter of the resolution did not pertain "to the government or internal affairs" of Westwood. The consolidated school district had been created in 1951 by action of the respective boards of education and by a special election involving the voters of both municipalities. Several years later there was significant dissatisfaction within Westwood concerning the operation of the consolidated districts, and the Borough council pursued the possibility of deconsolidation. A senator from Bergen County informed Borough officials that he would not introduce enabling legislation to permit the deconsolidation unless the desire to deconsolidate was clearly expressed by the voters of Westwood.

Reversing the Law Division's denial of plaintiff's motion for summary judgment, the Appellate Division held that the proposed referendum question constituted

a prohibited intrusion * * * in school district affairs by a body which has no business intermeddling with them in the slightest degree * * *. [T]he local governing body is not empowered in any way to seek or take any such action in the field of school affairs. [52 *N.J.Super.* at 431.]

Addressing the question whether the referendum concerned a matter pertaining "to the government or internal affairs" of Westwood, the court observed:

We are convinced that the quoted section can only be interpreted to mean a question of policy relating to matters in that sphere of government committed by law to and within or related to the powers of the body permitted to call for the referendum. In other words, sentiment can only be asked for with respect to matters concerning or as to which the particular body has the power to act. Any broader interpretation would open the doors without any restriction and would lead to nothing but confusion and turmoil. It would go far beyond the obvious purpose of the device, *i.e.*, to assist the body calling for the vote in determining the course of action it should pursue on a problem or issue before it and within its jurisdiction. Since here the matter of school district deconsolidation is outside the governing body's sphere and it could not act in the matter in any way, the language of the referendum statute itself furnishes no support to the borough's position. [*Id.* at 432–33.] [1]

The critical statutory language was again construed in *Santoro v. Mayor and Council of South Plainfield,* 57 *N.J.Super.* 307 (Law Div.), aff'd, 57 *N.J.Super.* 498 (App.Div.1959). The Borough of South Plainfield proposed the following non-binding referendum questions:

1. Shall the Sewerage Authority of the Borough of South Plainfield proceed with its plans for financing and installing sanitary sewers in the Borough of South Plainfield?

2. Shall the Mayor and Council of the Borough of South Plainfield undertake the planning, financing, and installing of sanitary sewers in the Borough of South Plainfield? [57 *N.J.Super.* at 309.]

Noting that the Borough had created its own sewerage authority several years earlier, the Law Division observed that all of the municipality's powers over sewerage disposal had been transferred to the sewerage authority. Accordingly, the Law

---

[1] Based on Judge Gaulkin's dissent in the Appellate Division, the Bergen County Clerk filed an appeal with this Court notwithstanding the determination by the Borough of Westwood to comply with the Appellate Division's decision. We dismissed the county clerk's appeal without reaching the merits. Three members of the Court noted their agreement with Judge Gaulkin's dissenting opinion.

Division invalidated the proposed referendum on the basis that the sewerage authority had full and exclusive power over the "planning, financing, and installing of sanitary sewers," and that the governing body had no power to act with respect to the subject matter of the referendum question. *Id.* at 312–14. The Appellate Division affirmed, citing *Botkin* for the proposition that "referendum questions must relate to action which the municipality has the authority to take * * *. If the municipality has no power to act it has no right to seek the voters' advice whether to do so." 57 *N.J.Super.* at 501–02.

In *Camden County Board of Chosen Freeholders v. Camden County Clerk*, 193 *N.J.Super.* 100 (Law Div.), aff'd, 193 *N.J.Super.* 111 (App.Div.1983), the Camden County Board of Chosen Freeholders attempted to place on the general election ballot a non-binding referendum question addressing whether the Board should be "bound by" a budget directive issued by the Chief Justice of this Court, establishing procedures to be followed in each county by assignment judges and trial court administrators. Because the resolution proposing the referendum was submitted to the county clerk after the statutory deadline, the clerk refused to include the referendum on the ballot. The County sued to compel its inclusion. The Law Division observed that the budget directive is

an independent judicial action affecting only matters within the judicial sphere. It does not require any action by the counties. It does not deal with county procedures, does not require counties to approve any judicial budget or to appropriate any money or to impose any taxes. * * * Consequently, matters covered by the directive, a subject of county power only by judicial allowance, are not matters "pertaining to the government or internal affairs" of the counties. Any other conclusion would permit county intrusion into judicial affairs contrary to the constitutional insistence upon the separation of the powers of the three branches of government. [193 *N.J.Super.* at 107–08 (footnote omitted).]

Accordingly, the court held that the proposed referendum question was invalid because it did not pertain to the "government or internal affairs" of the County. "The Legislature cannot have intended to authorize hollow referenda, *i.e.,* questions for

voter consideration involving undertakings which counties have no power to control." *Id.* at 106.

In *Gamrin v. Mayor and Council of Englewood,* 76 *N.J.Super.* 555 (1962), the Law Division upheld the validity of a referendum question proposed by the governing body that solicited voter sentiment concerning the transfer of "certain elementary school grades from their present schools into a single school." *Id.* at 557. Citing *Santoro* for the principle that "referendum questions must relate to action which the municipality has the authority to take," the court observed that the funds for the proposed school reorganization required action by the board of school estimate. *Id.* at 557–58 (citing 57 *N.J.Super.* at 501–02). Because members of the governing body served on the board of school estimate, the court concluded that "the governing body is necessarily involved in a field of potential action if there is a preference for the proposal." *Id.* at 558.

Finally, in *Rowson v. Township Committee of Mantua,* 171 *N.J.Super.* 129 (App.Div.1979), the municipal governing body proposed a referendum question concerning a proposal by the Township utilities authority to acquire five other utility companies and to construct additional storage and distribution facilities, both projects to be financed by long-term loans. The Appellate Division acknowledged that the subject matter of the referendum concerned actions to be taken by the Authority, but noted that the controlling statute, *N.J.S.A.* 40:14B–24, authorized "cooperative efforts" between municipalities and utilities authorities relating to construction and enlargement of facilities. *Id.* at 133. In addition, the court observed that the Township had recently guaranteed notes of the utilities authority totaling $515,000, thereby enhancing the authority's borrowing capacity. *Ibid.* Accordingly, the court concluded that the proposed referendum was sufficiently related to the "government or internal affairs" of the municipality. *Id.* at 134.

We are fully in accord with the guiding principle of the reported cases construing *N.J.S.A.* 19:37–1 as limiting the scope of the referenda authorized by statute to subjects actually encompassed within the specific jurisdictional powers of the county or municipality. Extended to its logical limits, this principle may generate close questions concerning the statute's application in specific instances. But we are confident that the legislature never intended the non-binding-referendum procedure to be used to test public opinion in the abstract or to ascertain the public's views on controversial or timely issues outside the province of the governing body soliciting them. As Justice [then Judge] Hall aptly stated in *Botkin:*

> [S]entiment can only be asked for with respect to matters concerning or as to which the particular body *has the power to act.* Any broader interpretation would open the doors without any restriction and would lead to nothing but confusion and turmoil. [52 *N.J.Super.* at 432–33 (emphasis added).]

### III.

We focus on the specific content of the referendum question before us to ascertain its purported relevance to county government. It solicits the voters' views on whether the Freeholders should *advise the legislature to take certain actions,* which we summarize as follows: (1) roll back auto insurance rates by twenty percent; (2) abolish the Joint Underwriting Association (established by the legislature in 1983 to supplant the Assigned Risk Plan for private passenger vehicles), and the RMEC surcharge (The residual market equalization charge is the amount that, when added to other sources of JUA income, will enable the JUA to break even. *N.J.S.A.* 17:30E–3o.), replacing them with a system enabling drivers meeting objective good-driver criteria to buy insurance from any company; establish an assigned-risk plan solely for drivers not meeting such criteria; require insurers to base rates solely on objective, risk-related criteria; subject only to the United States and New Jersey Constitutions, require the insurance industry to pay off the JUA deficit; repeal New Jersey's anti-trust exemption for the insurance industry, *N.J.S.A.* 56:9–5b(4), its anti-rebate law, *N.J.*

*S.A.* 17:29A–15, and its anti-group laws; establish a computerized auto-insurance price-information system; and establish a voluntary, non-profit, consumer-operated corporation to intervene before the insurance department.

We note the argument by defendants-intervenors that some of the specific proposals included in this proposed question are either so highly technical or so general that they would not readily be understood by the average voter. In another context we have emphasized the need for voters to be able to understand public questions so that they may cast their votes intelligently. *See Gormley v. Lan*, 88 *N.J.* 26, 37 (1981). Because we rest our decision on other grounds, we need not further address this issue.

Each one of the proposals set forth in the proposed question requires action exclusively by the legislature, and no action whatsoever by county government. It is indisputable that not one of these proposals deals with a subject concerning which Freeholders have "the power to act." *Botkin*, 52 *N.J.Super.* at 433. By that standard, the proposals set forth in the question do not meet the statutory requirement.

CAR asserts, however, that because the referendum solicits voter sentiment on whether the Freeholders should *advise* the legislature to take the actions proposed, the subject matter of the referendum is within the jurisdiction of the Board. By drafting referenda questions to solicit voter approval for *advice* to other governmental bodies, a municipality or county could burden the ballot with questions on virtually any issue confronting any unit of government. If this were permitted, the legislative purpose to confine such referenda to subjects within the jurisdiction and governmental competence of a municipality or county would be easily circumvented. We hold that the statutory requirement that the question pertain to the "government or internal affairs" of the municipality or county is not satisfied merely by the furnishing of unsolicited, non-

binding advice to another governmental body about a matter within *its* jurisdiction.

■ We also reject the contention that the County's expenditure of substantial funds for insurance coverage creates a governmental interest in the subject matter of the CAR referendum question sufficient to sustain it. We note but do not address the argument of defendants-intervenors that the county's cost of commercial lines insurance would be unaffected by the referendum question's initiatives that deal solely with personal lines automobile insurance. Even were we to credit CAR's undocumented assertion that the cost of Mercer County's participation in the Mercer County Municipal Insurance Fund would be reduced if the legislature implemented the referendum proposals, we cannot agree that the budgetary implications of the referendum constitute an adequate governmental interest to sustain it. By that standard, any referendum question that addressed a subject related to municipal or county budgets would be authorized, whether or not it was within the sphere of municipal or county government. If the governmental-interest test were satisfied merely by a budgetary impact, then any county could use its non-binding-referendum authority to elicit public opinion on issues related to welfare, court administration, law enforcement, and a myriad of other subjects that are statutorily committed to government at the state level and beyond the scope of county governmental responsibility. We hold that the County's budgetary interest in controlling insurance costs is insufficient to sustain the validity of the CAR referendum question.

To allow a local referendum on a subject that is statutorily committed to state government would be inconsistent with the legislative scheme, which now authorizes the presentation of such non-binding public questions only with respect to matters of local concern. *See Botkin, supra,* 52 *N.J.Super.* at 432–33. We also note that a virtually identical referendum question was proposed for consideration on a statewide basis by Assembly

Bill No. 4503, introduced May 15, 1989. The bill was introduced without reference to Committee and given second reading, but a motion to advance the bill from second to third reading was defeated by a vote of forty to one. No further action has been taken on the bill. The legislature's refusal to authorize such a statewide referendum on a subject within its governmental power is an added factor supporting our conclusion that county-wide referenda on this subject, concededly outside the sphere of county governmental responsibility, are contrary to the legislative intendment. It would be anomalous to sanction the presentation of this question on a local basis when the state legislature, within whose governmental authority this subject lies, has rejected its presentation on a statewide basis.

We fully appreciate the significant public interest in automobile-insurance costs and the statewide interest in measures calculated to reduce the cost of automobile-insurance premiums. We acknowledge plaintiff-intervenor's laudable public purpose in attempting to focus voter concern on proposals intended to reduce automobile-insurance costs. Under our current laws, however, effectuating such concerns is the responsibility of the legislature.

We hold that the CAR referendum question is not a matter "pertaining to the government or internal affairs" of a county. Hence, it cannot be included on the Mercer County general-election ballot or on the general-election ballot of any other county. We note and specifically reject the contention of the Hudson County Board of Chosen Freeholders that the CAR referendum question is permissible in that county by virtue of its adoption of the county executive plan form of government pursuant to *N.J.S.A.* 40:41A–31.

Judgment reversed.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.