63 N.J. Super. 560 (1960)
165 A.2d 33
THE BOARD OF EDUCATION OF THE CITY OF HACKENSACK IN THE COUNTY OF BERGEN, ET AL., PLAINTIFFS-APPELLANTS,
v.
CITY OF HACKENSACK IN THE COUNTY OF BERGEN, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1960.
Decided November 1, 1960.
*561 Before Judges CONFORD, FREUND and KILKENNY.
*562 Mr. John F. Butler argued the cause for plaintiffs-appellants.
Mr. John W. Leyden, Jr., argued the cause for defendants-respondents.
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiffs Board of Education of the City of Hackensack and two individual taxpayers of the municipality challenge the validity of a resolution of the Mayor and Council of the City of Hackensack providing for the placement on the official ballot to be used at the next general election and to be voted upon by the voters of the city the following proposition:
"Are you in favor of spending $2,586,579.00, excluding equipment, based on an estimate published by the Board of Education in June, 1960, for the conversion of the State Street Junior High School into a consolidated Central Junior High School?"
The Bergen County Clerk has arranged to place this question on the ballot to be voted upon by the voters of Hackensack at the general election of November 8, 1960.
The Law Division, Bergen County, held the resolution lawful, and plaintiffs appeal.
The action of the governing body was taken pursuant to N.J.S.A. 19:37-1, which reads as follows:
"When the governing body of any municipality or of any county desires to ascertain the sentiment of the legal voters of the municipality or county upon any question or policy pertaining to the government or internal affairs thereof, and there is no other statute by which the sentiment can be ascertained by the submission of such question to a vote of the electors in the municipality or county at any election to be held therein, the governing body may adopt at any regular meeting an ordinance or a resolution requesting the clerk of the county to print upon the official ballots to be used at the next ensuing general election a certain proposition to be formulated and expressed in the ordinance or resolution in concise form. Such request shall be filed with the clerk of the county not later than forty days previous to the election."
*563 The result of such a referendum is not binding on the governing body. R.S. 19:37-4.
The assault upon the proposed referendum is made upon the following grounds: (1) the resolution was required to be adopted at a regular meeting of the governing body, but in fact was adopted at a special meeting September 26, 1960; (2) the subject of the referendum is an improper intrusion by the governing body into school affairs; it is not a matter pertaining to the "government or internal affairs" of the municipality, within the interpretation of the statute by this court in Botkin v. Mayor and Borough Council of Borough of Westwood, 52 N.J. Super. 416, 432 (App. Div. 1958), appeal dismissed on other grounds 28 N.J. 218 (1958); and see Santoro v. Mayor and Council of Borough of South Plainfield, 57 N.J. Super. 498 (App. Div. 1959), for the reason that the problem involved in the proposition was not then before the governing body nor within its jurisdiction; (3) there are specific statutes available by which the sentiment of the voters on the question can be ascertained by referendum; and (4) the phraseology of the proposition is false and misleading.
The pertinent statutory and factual background is as follows:
The Hackensack school district is what is known as a "Chapter 6" district. R.S. 18:6-1 et seq. The here significant characteristic of such a district is that general responsibility for its fiscal affairs is shared between an appointive Board of Education and a Board of School Estimate comprised of some members both of the Board of Education (here, two) and of the governing body of the municipality (here, three, including the Mayor). When the Board of Education decides it is necessary to raise funds for land or buildings it prepares and delivers to the members of the Board of School Estimate a statement of the amount estimated as necessary therefor, R.S. 18:6-59. The latter agency is directed ("shall") to "fix and determine the amount necessary therefor" and to certify such amount to the Board *564 of Education and to the governing body, R.S. 18:6-60. The statute then provides that the governing body "shall," subject to N.J.S.A. 18:6-62, either: (a) appropriate the sum so fixed in the same manner as appropriations generally are made or (b) by ordinance appropriate the amount of money so fixed and borrow the requisite funds through the issuance of bonds "in accordance with the provisions of Article 18 of Chapter 5 of this Title (§ 18:5-84 et seq.)" and under specified regulations not here pertinent. N.J.S.A. 18:6-61. The moneys appropriated or the proceeds of the bonds are directed to be paid to the custodian of school funds of the school district for disbursement on warrant of the Board of Education.
The only direct qualification upon the obligation of the governing body to raise the needed money by one or the other of the two specified methods is N.J.S.A. 18:6-62, which provides that no appropriation pursuant to N.J.S.A. 18:6-61 shall be made, which, if added to the net school debt, exceeds 3% of the average assessed valuations of property, unless the governing body assents thereto. Subject to this proviso, the duty of the governing body to raise the money is mandatory. Town Council of Montclair v. Baxter, 76 N.J.L. 68 (Sup. Ct. 1908); County of Monmouth v. Board of Com'rs of Long Branch, 2 N.J. Misc. 150 (Sup. Ct. 1924). It is conceded by the parties that an appropriation of anything like two and a half million dollars for school purposes would bring into operation the condition specified by N.J.S.A. 18:6-62 and thereby, in effect, give the Mayor and Council of Hackensack an absolute veto over such an expenditure.
An understanding of the full scope of the issues herein requires reference also to N.J.S.A. 18:5-84 et seq., which further regulate issuance of school bonds, and are applicable, by reference, to the duty of a Chapter 6 municipal governing body under N.J.S.A. 18:6-61, as noted above.
A Chapter 6 "certified school district" (which Hackensack is) may not issue bonds increasing the net school debt *565 to more than 8% of average assessed valuations (N.J.S.A. 18:5-84b.) except by ordinance passed by a two-thirds vote of the governing body, or by a majority vote plus a favorable popular referendum. N.J.S.A. 18:5-85. (Other expedients for by-passing N.J.S.A. 18:5-84 are available under N.J.S.A. 18:5-86 but are not here pertinent.) Whenever N.J.S.A. 18:5-85 is resorted to, the percentage of net debt as stated in the supplemental debt statement of the municipality on file must not exceed 7%. Ibid. The parties have stipulated that a bond issue of the amount mentioned in the proposition here at issue would be interdicted by the 8% criterion fixed in N.J.S.A. 18:5-84b. mentioned above, but if ordained under authority of N.J.S.A. 18:5-85 would not offend the 7% limitation specified therein in reference to the supplemental debt statement. It follows that the latter statutory section is available to the governing body of Hackensack as authorization should it choose, when and if the question is ripe for its action, to adopt an ordinance to issue the indicated amount of bonds for the stated purpose.
It remains but to cite, in respect to pertinent legislative background, N.J.S.A. 18:6-63, which in substance provides that, whether or not otherwise required, the governing body may at its option call for a popular referendum at any general, special or municipal election confirming an ordinance authorizing the issuance of bonds under N.J.S.A. 18:5-85.
In June 1960 the Board of Education published and distributed throughout the city a pamphlet describing a proposed plan endorsed by the Board for the establishment of a single junior high school in the city pursuant to the recommendations of a Citizens Advisory Committee. The pamphlet gave notice of a public meeting June 20, 1960 at which views of the public would be solicited and consideration given by the Board as to which of two proposed sites should be used for the school. A sketch and summary of the cost items on each site basis was set out. Under the heading: "Proposed Addition to State Street Junior High School" (emphasis added) the "estimated cost figures" are shown to aggregate *566 $2,586,579, of which $1,911,000 is allocated to "Building: 91,000 sq. ft. * * *" and $131,500 to "Alterations to Existing Buildings." Land acquisition was estimated at $276,579.
On September 12, 1960 the Board of Education duly resolved that it was necessary to acquire certain land in the vicinity of the State Street School for school purposes and that $295,000 was the amount required. On September 20, 1960 the Board wrote the Mayor and Council that it intended to expand the State Street School and requested a meeting of the Board of School Estimate on October 17, 1960 to fix and determine the amount needed for the land, pursuant to statute.
On September 26, 1960, at a special meeting of the Mayor and Council broadly publicized and attended by members of the Board of Education, school system officials and large numbers of the public, the governing body adopted the referendum resolution here in question.

I.
By the time the governing body decided to act on the referendum it was too late to comply with the statutory directives of 40 days' notice to the county clerk and action at a regular meeting since such meetings are held only on the first and third Tuesdays of each month. Therefore action was taken at a special meeting. We have considered whether a regular meeting was mandatory for this purpose, as argued by plaintiffs. The question is a close one, but we need not resolve it in view of the existence of two positive, and, in our judgment, compelling reasons why the resolution must be voided. Before discussing those, however, we take up plaintiffs' contention that the resolution was invalid for the reason that there was not pending before the Mayor and Council when it acted on the resolution the question of appropriating or raising $2,586,579 for a junior high school and therefore that issue was not a matter within its jurisdiction and consequently not a "question or policy pertaining *567 to the government or internal affairs" of Hackensack, within the reasoning in Botkin v. Mayor and Borough Council of Borough of Westwood, supra. That case held a non-binding referendum could be ordered by a governing body only as to a "problem or issue before it and within its jurisdiction" (52 N.J. Super., at p. 432).
Plaintiffs argue that nothing was before the governing body when it acted. All the Board of Education had requested at that time was money for land, and even that request had not yet cleared the prerequisite of fixing and determination by the Board of School Estimate of the exact amount to be raised for that purpose. The matter of raising money even for land was therefore not before the Mayor and Council, see Board of Education of Montclair v. Town Council of Montclair, 76 N.J.L. 59 (Sup. Ct. 1908), much less the two and a half million dollars for the whole project, so goes the argument. We deem the argued construction of the statute narrower than required by the Botkin case, and not reasonably tenable.
The request for money for land was an obvious preliminary to imminent requests by the Board of Education for the financing of the entire junior high school project. The statute for non-binding referenda can only be used at a general election. To confine the availability of the statute as closely as here contended for would unreasonably restrict its scope, since completion of all technical preliminaries for official action on such a matter as this might not come until a date when the next ensuing general election would be so distant as not to be practicably usable for the referendum in the light of the time exigencies of the particular problem or project. We therefore conclude the junior high school problem was, in a general sense, pending before the governing body when it acted, and the test of the Botkin case satisfied in that regard. Of course, the matter was within the jurisdiction of the Mayor and Council since it had the absolute power, as noted above, to withhold the requisite funds by virtue of N.J.S.A. 18:6-62, cited above (the *568 3% of assessed valuations provision). The resolution can therefore not be held an "improper intrusion" into school affairs. Compare the situation in a Chapter 7 school district, discussed in Botkin (52 N.J. Super., at p. 426).

II.
We determine the non-binding referendum was not here lawfully available because a statutory condition for its employment is that there be "no other statute by which the sentiment [of the voters] can be ascertained" by submission of the question "to a vote of the electors in the municipality * * * at any election to be held therein." N.J.S.A. 19:37-1. In this case there was such a statute  N.J.S.A. 18:6-63  as indicated above. That section permits the governing body to submit to the voters for approval any bond issue it authorizes for school construction purposes pursuant to N.J.S.A. 18:5-85 or 18:5-86. Bonds for the construction of such a school project as this are, under N.J.S.A. 18:6-61, expressly authorizable "in accordance with" N.J.S.A. 18:5-84 et seq. The procedure fixed by N.J.S.A. 18:5-85 would have to be used in this case, for, as already indicated, the limitation of 8% of average assessed valuations fixed by N.J.S.A. 18:5-84 for this school district would here be exceeded. (Moreover, if the vote of the governing body on the enabling ordinance fell short of two-thirds of the membership, achieving only a majority, a popular referendum would be mandatory.) It is therefore clear that N.J.S.A. 18:6-63 affords the alternative statutory mechanism for determining voter sentiment which precludes use of the non-binding referendum under N.J.S.A. 19:37-1 by express declaration of that provision.
Defendants argue against the conclusion thus arrived at, and with some degree of surface persuasiveness, on the basis that the alternative means of ascertaining voter sentiment does not serve the purpose of disclosing the verdict of the electorate prior to commitment on the bond proposition by *569 the governing body, and without binding it by the result of the election. There are, however, two answers to the argument.
First, legislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless. Abbotts Dairies, Inc. v. Armstrong, 14 N.J. 319 (1954). Further, legislation on cognate subjects must be construed in pari materia. We know of no statutory provision for a non-binding referendum on municipal or county affairs available to a governing body other than N.J.S.A. 19:37-1; nor can counsel cite any. There are, of course, a multitude of statutory provisions for the activation by governing bodies of binding referenda on various phases of municipal or county government, too obvious and numerous to require citation. It is therefore logical that the alternative methods of ascertaining voter sentiment on a particular question referred to in N.J.S.A. 19:37-1 are inclusive of statutes for binding referenda. Even were other statutes for non-binding municipal referenda discoverable, it would still be obvious that the characteristic statute for ascertaining voter sentiment on a particular municipal problem is the binding referendum, and consequently that is what the Legislature must have had in mind primarily, if not exclusively, by the condition written into N.J.S.A. 19:37-1 (the original form of which was enacted by L. 1930, c. 187).
To be emphasized in this connection is that this act applies to municipal and county government generally, not merely school affairs, and its construction must be pursued in the light of the broad spectrum of statutory provisions for popular referenda in all aspects of municipal and county government.
We thus conclude that in order to give sense and purpose to the statutory condition it must be held to contemplate such a referendum as this governing body can lawfully use by authority of N.J.S.A. 18:6-63 in connection with an ordinance for issuance of school bonds.
Second, we find nothing anomalous in the foregoing construction of the statute even though it denies the governing *570 body an opportunity of learning voter sentiment in advance in this kind of contingency. The legislative scheme is simply this. Wherever a governing body can by specific enabling statute submit a particular governmental problem to popular referendum, it should do so rather than have recourse to a non-binding referendum. But where no such statute exists for the purpose, and only then, it may have the benefit of an advisory opinion of the voters on the matter.

III.
As observed above, of the $2,586,579 estimated by the Board of Education for the entire State Street Junior High School project, $1,911,000 was allocated to entirely new building construction and only $131,500 to "alterations" of the old structure (the remainder was for site improvements, land acquisition, and fees and contingencies). The proposition submitted to the people refers to the spending of $2,586,579 for "conversion" of the State Street School into a consolidated Junior High School. No otherwise uninformed voter could fairly have been apprised by the language of the proposition as placed on the ballot that anything like $1,911,000 of the sum mentioned was to go into construction of a completely new addition to the old building. The representation in the proposition that the whole $2,586,579 was for a building "conversion" was, consequently, a factually (though, perhaps inadvertently) untrue and misleading statement of the purport of the published plan of the Board of Education, upon which the municipal resolution for the referendum was concededly sought to be justified, and of the use to be made of the money. It would subvert the intent and function of a popular referendum to submit a proposal so worded to the voters of the city in the light of the facts before us. The legislative policy is that public questions shall be "presented in simple language that can be easily understood by the voter" and that phrasing of the question "shall clearly set forth the true purpose of the *571 matter being voted upon." N.J.S.A. 19:3-6. And see 82 C.J.S. Statutes, § 140, p. 247; Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 232-233 (1960); Botkin v. Mayor and Borough Council of Borough of Westwood, supra (52 N.J. Super., at p. 431). Cf. the concurring opinion in Guernsey v. Allan, 63 N.J. Super. 270 (App. Div. 1960).
The proposition will thus have to be stricken from the ballot for the additional reason that it is not in accordance with the facts and would mislead the voters.
Judgment reversed; the proposition is ordered stricken from the ballot; no costs.