644 A.2d 598

THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC., AND BRIDGE AVENUE ASSOCIATES, INC., PLAINTIFFS–APPELLANTS, v. THE BOROUGH OF POINT PLEASANT, DEFENDANT–RESPONDENT, AND M. DEAN HAINES, COUNTY CLERK OF THE COUNTY OF OCEAN, DEFENDANT.

Argued March 1, 1994—Decided August 4, 1994.

138

*Gail L. Price* argued the cause for appellant (*Beattie Padovano,* attorneys; *Thomas W. Dunn,* on the brief).

*Jerry J. Dasti* argued the cause for respondent (*Dasti, Murphy & Wellerson,* attorneys).

*Fred G. Stickel, III,* General Counsel, argued the cause for *amici curiae,* New Jersey State League of Municipalities and Institute of Municipal Attorneys.

The opinion of the Court was delivered by

POLLOCK, J.

■ A section of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–62.B (section 62.b), prohibits the adoption or amendment of a zoning ordinance by referendum. The Law Division held that the prohibition includes a non-binding referendum. In an unpublished opinion, the Appellate Division reversed. We granted the petition for certification of *The Great Atlantic and Pacific Tea Company, Inc. v. Borough of Point Pleasant (A & P),* 134 *N.J.* 560, 636 *A.*2d 518 (1993), and now affirm the judgment of the Appellate Division. We hold that the prohibition in section 62.b against the adoption of a zoning ordinance by referendum does not include a non-binding referendum.

-I-

On December 22, 1992, the Point Pleasant Borough Council (the Borough or the Council) adopted Ordinance 92–70, an amendment to its zoning ordinance that permitted retail uses in Town Center, a section of Point Pleasant. Before that amendment, the zoning ordinance forbade such uses in Town Center. According to the Master Plan, the purpose of Town Center is to "allow either the establishment of low-intensity, nonretail commercial uses such as offices, or in the alternative, to look for the acquisition of all or part of the remaining vacant land to provide a more intensive area for public purposes."

After the 1992 amendment, A & P sought to establish a supermarket in Town Center. It purchased a tract of land and submitted a general concept plan to the Planning Board (the Board). A & P revised the plan, and the Council amended several bulk requirements to accommodate A & P's plan. A & P then filed an application for site plan approval with the Board, which deemed the application complete in September 1993.

In the interim, on July 20, 1993, the Council adopted a resolution that requested the Ocean County Clerk to place on the November general-election ballot a "question" concerning the repeal of Ordinance 92–70. The question and interpretive statement read:

QUESTION:

Should the Borough Council amend the Borough Zoning Ordinances to prohibit retail uses, in the Town Center Zone?

INTERPRETIVE STATEMENT:

The Borough Council has amended the Borough Zoning Ordinances to allow for retail uses in the Town Center Zone. If the zoning, as currently amended, remains retail[,] uses such as an A & P supermarke[t] will be allowed as a permitted use in the Town Center Zone.

On September 16, 1993, A & P filed a complaint in the Law Division to enjoin placing the question on the November general-election ballot. A & P contended that the proposed public question was a prohibited referendum. The Borough answered that section 62.b did not apply because it concerned only referenda that

were binding, not those that were non-binding public questions. At the hearing before the Law Division, the Borough offered to revise the wording of the question to clarify that an affirmative vote would mean that the Borough would consider amending the ordinance, not that it was bound to do so.

The Law Division ruled for A & P, determining that the resolution was "an [ordinance], an amendment or revision to the existing zoning ordinance," and rejected the Borough's offer to revise the question. The court further determined that section 62.b did not distinguish between binding and non-binding referenda and that the MLUL specifically provided alternative means for public comment. Finally, the court held that a municipality's zoning power was a delegation of the State's police power and that the Borough could not delegate that power to the public through a referendum. Consequently, the Law Division declared the resolution invalid and enjoined the county clerk from placing the question on the ballot.

On the Borough's application for emergent relief, the Appellate Division reversed and remanded the matter to the Law Division for entry of an order denying A & P relief. In a brief statement accompanying the order, the Appellate Division stated that section 62.b did not prohibit a municipality from submitting a non-binding question to voters pursuant to *N.J.S.A.* 19:37–1. The court stated that section 62.b applied only to binding referenda and that non-binding referenda permitted by *N.J.S.A.* 19:37–1 are "a better means for the governing body to gather a true representation of public sentiment" than public meetings required by the MLUL. We denied A & P's application for a stay, and the election proceeded.

By a vote of 3,789 to 2,078, the voters of Point Pleasant expressed their preference that the Council amend the zoning ordinance to prohibit commercial retail uses such as A & P's supermarket in Town Center. One week later, on November 9, 1993, the Council adopted on first reading Ordinance 93–30, which amended the zoning ordinance to prohibit such uses. The Planning Board declined to make recommendations about the ordi-

nance because it believed that such action would constitute a conflict of interest with its duty to review A & P's site plan. On December 21, 1993, the Council passed the ordinance on second reading, and the mayor signed the ordinance the next day.

Meanwhile, the Planning Board conducted hearings in October and November on A & P's site plan. Following a hearing on December 16, 1993, A & P agreed to an extension beyond December 21, the date of the Council's scheduled second reading of Ordinance 93–30. Consequently, the Planning Board scheduled a hearing for January 6, 1994.

On January 6, however, the Planning Board refused to continue the hearings, because it was uncertain whether Ordinance 93–30 had been filed with the county planning board as required by *N.J.S.A.* 40:55D–16. If the ordinance had been filed, A & P's proposed supermarket would be a non-conforming use and the Planning Board would not have had jurisdiction to review the site plan. After adjourning the matter until January 13, the Board determined that it never had had jurisdiction to consider A & P's application, because Ordinance 92–70, the earlier amendment that permitted commercial retail uses in Town Center, had never been filed with the county planning board.

–II–

In municipal government, few issues generate as much public interest as the control of land-use development. Zoning ordinances touch people where they live. Sensitive to the intense public interest in local land-use development, the Legislature has developed an orderly structure for public participation in the process. That process also contemplates the rational development of land use, free from undue political influence. This appeal questions whether the Legislature has banned local voters from expressing a non-binding preference for proposed zoning amendments.

One purpose of the MLUL, *N.J.S.A.* 40:55D–1 to –129, was to coordinate municipal land-use development. The MLUL incor-

porates statutory regulations concerning zoning and planning, planned unit developments, site-plan approval, and the adoption of master plans. *Senate and County Mun. Gov't Comm.*, Statement to Senate Bill No. 3054, 1, 67 (May 8, 1975) (*Committee Statement*). Through the MLUL, the Legislature intended to simplify procedures for land-use regulation, eliminate jurisdictional overlaps, reduce costs, and promote construction. *Id.* at 1; *see also* *N.J.S.A.* 40:55D-2 (outlining intent and purpose of MLUL). The MLUL also recognizes "the increasing awareness of the public involvement and right-to-know...." Office of Governor Brendan T. Byrne, *Press Release* (Jan. 14, 1978) ("This measure should reduce costs, cut red tape and promote needed construction."). *See* The Municipal Land Use Law, *New Jersey Municipalities*, Mar. 1976, at 8 (*New Jersey Municipalities*).

The zoning process begins with the adoption of a master plan by the planning board. *See N.J.S.A.* 40:55D-23 to -28. Once the planning board adopts a master plan, the municipality may then enact a conforming zoning ordinance. *See N.J.S.A.* 40:55D-62.a. When adopting a zoning ordinance, the governing body introduces the ordinance on first reading, *N.J.S.A.* 40:49-2.a; publishes a notice of a public hearing, *N.J.S.A.* 40:49-2.b; submits the ordinance to the planning board for review, *N.J.S.A.* 40:55D-26.a, -64; and considers the ordinance for adoption after a second reading, *N.J.S.A.* 40:49-2.c. In a borough such as Point Pleasant, after the mayor signs the ordinance in accordance with *N.J.S.A.* 40A:60-5.d, the governing body must file the ordinance with the county planning board. *N.J.S.A.* 40:55D-16. The entire process is replete with the opportunity for public participation. *See generally* William M. Cox, *New Jersey Zoning and Land Use Administration* §§ 34-1 to 34-2.5, at 498-505 (1994) (reviewing procedure for adopting zoning ordinances).

–III–

Until the Legislature included section 62.b in the MLUL in 1975, only judicial decisions restricted the use of referenda on

zoning ordinances. Prior statutes had not prohibited referenda. *Compare N.J.S.A.* 40:55D–62.b *with R.S.* 40:55D–30 to –32.

Section 62.b provides: "No zoning ordinance and no amendment or revision to any zoning ordinance shall be submitted to or adopted by initiative or referendum." The question is whether "referendum" in section 62.b includes a non-binding referendum.

*N.J.S.A.* 19:37–1 defines a non-binding referendum, identified as an "[o]rdinance or resolution for submitting question":

> When the governing body of any municipality or of any county desires to ascertain the sentiment of the legal voters of the municipality or county upon any question or policy pertaining to the government or internal affairs thereof, and there is no other statute by which the sentiment can be ascertained by the submission of such question to a vote of the electors in the municipality or county at any election to be held therein, the governing body may adopt at any regular meeting an ordinance or a resolution requesting the clerk of the county to print upon the official ballots to be used at the next ensuing general election a certain proposition to be formulated and expressed in the ordinance or resolution in concise form. Such request shall be filed with the clerk of the county not later than 74 days previous to the election.

A & P argues that the section 62.b prohibition against referenda on zoning ordinances includes non-binding public questions under *N.J.S.A.* 19:37–1. Relying on the plain language, legislative history, and policy underlying section 62.b, we hold that a municipality may submit a non-binding question to voters to ascertain public sentiment on a zoning amendment.

–A–

*Plain Meaning*

A & P argues that the absence of a distinction in section 62.b between binding and non-binding referenda signifies that the Legislature intended to proscribe all forms of referenda, both binding and non-binding. We disagree.

The MLUL does not define the term "referendum." *See N.J.S.A.* 40:55D–6 (defining terms "P to R" in MLUL). When construing legislation, in the absence of a specific definition, we give words their ordinary and well-understood meanings. *Levin*

*v. Township of Parsippany–Troy Hills,* 82 *N.J.* 174, 182, 411 *A.*2d
704 (1980). Ordinarily, "referendum" does not include non-bind-
ing public questions. "Referendum" ordinarily refers to the pow-
er of the people to approve or reject legislative action, including
specific legislation. *See* 42 *Am.Jur.* 2d *Initiative and Referendum*
§ 1, at 649 (1969) ("The term 'referendum' refers to the power
reserved to the people in some jurisdictions to approve or reject at
the polls any act of the legislature, and also encompasses the
power of the people to approve or reject legislation which has been
referred to them by the legislature.") (footnotes omitted); *see also
City of Eastlake v. Forest City Enter., Inc.,* 426 *U.S.* 668, 678, 96
*S.Ct.* 2358, 2364, 49 *L.Ed.*2d 132, 140 (1976) (" 'A referendum . . .
is the city itself legislating through its voters—an exercise by the
voters of their traditional right through direct legislation to over-
ride the views of their elected representatives as to what serves
the public interest.' " (quoting *Southern Alameda Spanish Speak-
ing Org. v. City of Union City,* 424 *F.*2d 291, 294 (9th Cir.1970));
J.R. Kemper, Annotation, *Adoption of Zoning Ordinance or
Amendment Thereto as Subject of Referendum,* 72 *A.L.R.*3d 1030
n. 2 (1976) (defining "referendum" as "the power reserved to the
people in some jurisdictions to approve or reject at the polls any
act of the legislature. . . . [I]t is the power of the people to
approve or set aside a measure which has actually been thereto-
fore passed or adopted by a legislative body. . . ."); 35 *New Jersey
Practice, Local Government Law* § 484, at 337 (Michael A. Pane)
(2d ed. 1993) ("Referendum is the power to place enacted ordi-
nances on the ballot for ratification by the voters."); *Black's Law
Dictionary* 1152 (5th ed. 1979) ("Reservation by people of a state,
or local subdivision thereof, of right to have submitted for their
approval or rejection, under prescribed conditions, any law or part
of law passed by lawmaking body."). Hence, the term "referen-
dum" does not include all public participation in governmental
affairs. As customarily used, "referendum" includes binding pub-
lic actions only.

To the same effect, *N.J.S.A.* 40:69A–185, a provision of the
Faulkner Act, *N.J.S.A.* 40:69A–1 to –210, defines "referendum" as

the voters' "power to approve or reject at the polls any ordinance submitted by the council to the voters or any ordinance passed by the council...." Although Point Pleasant is not organized under the Faulkner Act, this provision sheds light on the Legislature's understanding of the meaning of the word "referendum." As used in the Faulkner Act, "referendum" means a vote that is binding. We have no reason to believe that the Legislature intended to impute a different meaning to "referendum" in section 62.b.

Read literally, the terms of *N.J.S.A.* 19:37–1 refer not to "referenda," but to the submission of public questions. Although such questions are commonly described as "non-binding referenda," *see New Jersey State AFL–CIO v. Bergen County Bd. of Chosen Freeholders*, 121 *N.J.* 255, 258, 579 *A*.2d 1231 (1990) (referring to public question submitted pursuant to *N.J.S.A.* 19:37–1 as "non-binding referendum"); *Borough of Eatontown v. Danskin*, 121 *N.J.Super.* 68, 72, 296 *A*.2d 81 (Law Div.1972) (same); 35 *New Jersey Practice, supra*, § 483 (same); *N.J.S.A.* 19:37–1 (same, referring to statutory title), that reference cannot transform a public question into a binding referendum.

The authorization in *N.J.S.A.* 19:37–1 to ascertain voter sentiment on public questions differs fundamentally from the power to ask voters to approve or to reject a specific legislative act. *N.J.S.A.* 19:37–1 authorizes a governing body to ascertain public sentiment before that body acts. It provides a method to gauge public opinion, which the governing body may consider or ignore in determining an appropriate course of action. In contrast, a referendum reviews already-taken governmental action and constitutes final voter acceptance or rejection of that action. Because of these differences, we believe that the plain meaning of "referendum" in section 62.b does not include questions such as the one at issue here.

The dissent argues that the use of the verb "submitted" in section 62.b must mean that the Legislature contemplated prohibiting non-binding referenda. *Post* at 159–61, 644 *A*.2d at 609–10. Nothing in the words or history of section 62.b supports the

argument. In the Faulkner Act, moreover, the Legislature used "submitted" when referring to action by initiative, *N.J.S.A.* 40:69A–184, or referendum, *N.J.S.A.* 40:69A–185. Both forms of action result in action that is binding on the governing body. Contrary to the dissent, the use of "submitted" in section 62.b does not establish that the Legislature contemplated prohibiting a non-binding referendum. In effect, the dissent asks the verb to carry too much weight. We are satisfied that section 62.b prohibits only a binding referendum.

The Legislature enacted *N.J.S.A.* 19:37–1 in 1930, *L.* 1930, *c.* 187. Consequently, we presume that when the Legislature enacted section 62.b in 1975, *L.* 1975, *c.* 291, it knew that *N.J.S.A.* 19:37–1 already provided for submitting non-binding public questions to voters. We also presume that the Legislature knew that the term "referendum" did not include a vote on these public questions. Had the Legislature intended to preclude non-binding voter participation in the enactment of zoning ordinances, it could have expressly stated that section 62.b extends to a referendum, whether binding or non-binding. In the absence of a clear expression of legislative intent, we cannot exclude the public from expressing a preference on a matter of such importance as an amendment to a zoning ordinance. Any exclusion of voters from the democratic process must come from the Legislature, not from this Court.

–B–

*Legislative History and Policy*

■ A & P also argues that non-binding referenda conflict with the purposes of the MLUL, which the Legislature designed to ensure rational land-use planning, to balance the needs of affected property owners and of the public, and to provide for public hearings. *Committee Statement, supra,* at 1, 67; *New Jersey Municipalities, supra,* at 8. We find no such conflict.

The legislative history of the MLUL suggests that the Legislature was concerned with binding, not non-binding, public action. Article 8 of the MLUL was intended to "generally follow[ ] existing law and case law." *New Jersey Municipalities, supra,* at 23; *see also Committee Statement, supra,* at 2 (stating that many changes in MLUL "involve the incorporation of case law into the planning statutes"). Prior land-use statutes did not proscribe either referenda or public questions. See *R.S.* 40:55–30 to –32. Pre–MLUL judicial decisions involved attempts to submit only binding referenda on zoning ordinances.

Two pre-MLUL cases involving municipalities established under the Faulkner Act are illuminating. In the first case, *Smith v. Township of Livingston,* 106 *N.J.Super.* 444, 256 *A.2d* 85 *aff'd o.b.,* 54 *N.J.* 525, 257 *A.2d* 698 (1969), the Chancery Division characterized the zoning act as an exclusive grant of legislative power to municipal governing bodies. It held that the act prevented voters from exercising the power of initiative under *N.J.S.A.* 40:69A–185. *Id.* at 457, 256 *A.2d* 85. Using the same reasoning, the Appellate Division in *Township of Sparta v. Spillane,* 125 *N.J.Super.* 519, 525, 312 *A.2d* 154 (1973), *certif. denied,* 64 *N.J.* 493, 317 *A.2d* 706 (1974), held that the zoning act prohibited a binding referendum on a zoning amendment under *N.J.S.A.* 40:69A–185. *Smith* and *Spillane* recognized that binding actions, such as an initiative or a referendum, should not extend to zoning ordinances. Such measures would circumvent statutory procedural requirements and effectively remove local governmental bodies from rational land-use planning.

Only one pre-MLUL case involved a non-binding referendum on a zoning amendment. In *Danskin, supra,* 121 *N.J.Super.* 68, 296 *A.2d* 81, objectors to a zoning amendment sought to place a non-binding referendum on the general-election ballot pursuant to *N.J.S.A.* 19:37–1. The court rejected their application as untimely. *Id.* at 78, 296 *A.2d* 81. In *dicta,* the court endorsed non-binding referenda:

> the statutory device considered here for ascertaining voter sentiment is so obvious-
> ly useful to those who are burdened with the duty of promoting the public welfare
> that a court should interfere only where a misuse is plain and that the courts
> should favor every effort by those charged with the responsibility of government to
> canvass the sentiment of the electorate where public policy is concerned.
>
> [*Id.* at 75–76, 296 A.2d 81.]

When interpreting legislation, we presume that the Legislature is familiar with existing case law. *Yanow v. Seven Oaks Park, Inc.*, 11 *N.J.* 341, 350, 94 A.2d 482 (1953). Consequently, we assume that the Legislature knew that *Smith* and *Spillane* prohibited initiatives and referenda and that *Danskin* approved non-binding referenda. Nothing in the MLUL indicates that the Legislature intended to change the result in any of those cases.

Contrary to the dissent, *post* at 153, 160–61, 644 A.2d at 606, 610, a governing body, after submitting a non-binding question to the voters, still must comply with the requirements for amending zoning ordinances. Here, the Council followed the procedures established by the Legislature for the enactment of zoning ordinances: it conducted a first reading of the ordinance, referred the matter to the Planning Board, and then conducted a second reading. Furthermore, the Council grounded the prohibition of retail commercial uses in Town Center in traditional zoning considerations. Those considerations included compliance with the master plan, which permitted commercial uses as conditional uses only and did not include retail uses such as the A & P supermarket. The Council also considered traffic congestion, drainage problems, and public opinion. Here, the public expressed its opinion not only at the public hearings, but also in the non-binding referendum.

In an analogous case, *Messer v. Township of Burlington*, 172 *N.J.Super.* 479, 484–85, 412 A.2d 1059 (1980), the Law Division considered the validity of an ordinance that required zoning and planning boards to hear applications for rezoning and to make recommendations to the governing body, which could then either grant or deny the applications. Although the MLUL did not expressly provide for this procedure, the court in *Messer* conclud-

ed that the procedure was permissible. *Id.* at 485, 412 *A.*2d 1059. The court stated, "the rezoning procedure authorized by the township merely permits the initiation of a request for an amendment and does not affect the discretion which the governing body has in such matters." *Ibid.* "[I]t confers a benefit by providing an additional approach to the legislative ear." *Id.* at 486, 412 *A.*2d 1059.

Here, as in *Messer*, the governing body pursued a course of action that the MLUL did not expressly address. In *Messer*, the governing body ordained that it could require zoning and planning boards to make recommendations concerning zoning amendments. Here, the governing body resolved to ascertain public opinion on the challenged amendment.

Like the authorization to proceed before the Planning Board or Board of Adjustment, the submission of a public question to voters provides "an additional approach to the legislative ear." As the court stated in *Messer*:

> The method by which a governing body may launch an amendment for consideration is not set forth [in the MLUL].... It may be commenced in any of the myriad of ways in which legislation is brought about, *e.g.*, through public petition, correspondence, public appearances and communications of all kinds from the community.
>
> [*Id.* at 485–86, 412 *A.*2d 1059.]

Like the property owners in *Messer*, the voters of Point Pleasant

> could have appeared before the township council and requested [that the zoning ordinance be changed to prohibit retail commercial uses in Town Center]; the governing body, if it so chose, could have acceded to [their] request. The procedure established by [submission of the question to the voters] established one method by which legislative needs may be brought to its council's attention.
>
> [*Id.* at 486, 412 *A.*2d 1059.]

Finally, the Senate Committee Statement accompanying the MLUL explains that section 62.b "[p]rohibits zoning by initiative and referendum ..., although protest referendums, on proposed amendment or revision of zoning ordinances, are retained...." *Committee Statement, supra*, at 5. This exception for "protest referendums" sheds little light on whether the Legislature intend-

ed to prohibit non-binding referenda. As defined by *N.J.S.A.* 40:55D–63, "protest referendum" refers not to the submission of a question to a public vote, but to the procedure by which the owners of twenty percent or more of affected property may prevent a zoning amendment from taking effect "except by a favorable vote of two-thirds of all the members of the governing body of the municipality." That section carries forward a similar provision from pre-existing zoning law. *See Levin, supra,* 82 *N.J.* at 180–82, 411 *A.*2d 704 (discussing protest provision under MLUL and prior law). The retention of a requirement of a heightened vote of a governing body because of a protest by twenty percent of affected property owners hardly suggests that the Legislature intended to deprive the general public of the right to express a preference on a proposed zoning amendment. If anything, the inclusion of the protest provision reflects the Legislature's concentration on the expression of public opinion that affects governmental action legally, not an expression that is purely advisory.

–C–

*"De Facto Referenda"*

 A & P argues that the non-binding referendum was a "de facto" referendum that coerced the Council into adopting Ordinance 93–30. The argument has no merit.

Non-binding public questions are not tantamount to binding referenda. *N.J.S.A.* 19:37–1 authorizes a governing body to submit a public question on "any question or policy." The statute makes no exception for zoning amendments. A & P's fear about the deleterious effect of a non-binding plebiscite would apply whenever municipal authorities seek public guidance on any of the wide range of issues authorized by the statute. The Legislature did not share that fear, stating: "Such result shall not bind the governing body from which the ordinance or resolution emanated, nor be taken or construed as other than an expression of sentiment by the voters, to be followed or disregarded by the governing body in its discretion." *N.J.S.A.* 19:37–4.

Similarly, courts have rejected non-binding referenda only when the submitted questions have not pertained to issues over which the submitting body has any authority, *see Board of Chosen Freeholders v. Szaferman*, 117 *N.J.* 94, 106–07, 563 *A.*2d 1132 (1989) (holding impermissible counties' non-binding referenda to advise Legislature on automobile-insurance regulations because issue was committed solely to Legislature); *New Jersey State AFL–CIO, supra*, 121 *N.J.* at 260–61, 579 *A.*2d 1231 (holding counties' non-binding referenda on tax and school-aid laws impermissible because counties had no power over issue), or when another statute provides for measuring public sentiment, *see Board of Educ. v. City of Hackensack*, 63 *N.J.Super.* 560, 568, 165 *A.*2d 33 (1960) (holding impermissible non-binding referendum concerning school construction bond issue because another statute permitted submission of question). By contrast, the Legislature has specifically delegated the zoning power to municipal governing bodies. Hence, the Borough possessed the power to act on the issue that was the subject of the public question.

Also, the MLUL does not provide an alternative mechanism to ascertain public sentiment on zoning issues. We distinguish *Hackensack, supra*, because the statute involved in that case, *R.S.* 18:6–63, permitted the governing body to "call for a popular referendum at any general, special or municipal election confirming an ordinance authorizing the issuance of bonds" for school construction. 63 *N.J.Super.* at 565, 165 *A.*2d 33. The statute afforded an "alternative statutory mechanism for determining voter sentiment which preclude[d] use of the non-binding referendum under *N.J.S.A.* 19:37–1 by express declaration of that provision." *Id.* at 568, 165 *A.*2d 33. In contrast, the MLUL does not provide an "alternative statutory mechanism for determining voter sentiment."

Protest referenda, as authorized by *N.J.S.A.* 40:55D–63, are not votes by the electorate of a municipality within the meaning of *N.J.S.A.* 19:37–1, but are expressions of opinion by a limited group of affected property owners. Moreover, public hearings, as useful

as they are, do not necessarily measure the sentiment of the entire community. More often, like protest referenda, they provide an outlet for neighbors and others directly affected by a land-use proposal.

Finally, we reject A & P's argument that the expression of voter sentiment in a general vote contravenes the MLUL. The design of the MLUL, which invites public participation at every material step, *see N.J.S.A.* 40:55D–10 (requiring hearing for applications for development and for adoption of master plan); *N.J.S.A.* 40:49– 2 (requiring public hearing at readings of zoning ordinances), supports the conclusion that non-binding referenda are permissible. One goal of the MLUL was to encourage public involvement in land-use planning and development. See *supra* at 142, 644 *A.*2d at 600 (discussing *Committee Statement* ). Nothing in the MLUL suggests that the Legislature intended that punctilio would replace public participation in the zoning process. The provision for public hearings in that process reinforces our conclusion. Non-binding referenda, like public hearings, can enlighten a governing body.

We conclude that the MLUL does not forbid voters from expressing their opinions on a proposed zoning amendment by voting on a public question. Nothing in section 62.b or in *N.J.S.A.* 19:37–1 precludes a governing body from measuring the non-binding sentiment of the public. Non-binding referenda, more-over, do not subvert the purpose of the MLUL. A municipality must still conform, as the Borough conformed here, to the procedural requirements of the MLUL. In the absence of an express statutory provision to the contrary, we construe section 62.b as not prohibiting a non-binding referendum under *N.J.S.A.* 19:37–1.

The judgment of the Appellate Division is affirmed.

STEIN, J., dissenting.

The practice of submitting questions to the public in the form of a non-binding referendum has obvious appeal. It allows a munici-

pality quickly to poll the public on a specific issue. It also affords the voting public a sense of participation in municipal affairs.

In contrast, the procedure for reviewing proposed zoning amendments, established under the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –129, *L.* 1975, *c.* 291, involves a lengthy, deliberative process, in which public opinion constitutes but one of many factors that must be considered before a governing body may approve an amendment to a zoning ordinance. The purpose of that elaborate process is to safeguard the public from the effects of arbitrariness and political influence in zoning decisions.

The Court today holds that a proposed amendment to a zoning ordinance may be the subject of a non-binding referendum. In doing so, the Court undermines a process that has been carefully developed over more than sixty years to protect property owners and the public from zoning decisions based on considerations other than sound and comprehensive planning.

I

A

"Zoning is a separation of the municipality into districts, and the regulation of buildings and structures in the districts so created, in accordance with their construction and the nature and extent of their use." *Mansfield & Swett, Inc. v. Town of West Orange,* 120 *N.J.L.* 145, 149, 198 *A.* 225 (Sup.Ct.1938). Zoning regulates "the type of building development [that] can take place on the land * * *." *Levin v. Township of Livingston,* 35 *N.J.* 500, 506, 173 *A.*2d 391 (1961). Municipal planning, on the other hand, "is concerned with the interrelationships and organization of land uses, including not only the physical ways in which land is developed but the manner of its use and the existence of municipal facilities to facilitate such use." 1 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 1.05, at 1–49 (1994). Thus, zoning is the mechanism for the regulation of development,

whereas planning provides a context and guides the manner in which that mechanism is to be applied. See *ibid.*

A history of the development of both zoning and planning in New Jersey highlights the recognition by the Legislature and the courts that the proper exercise of the zoning power requires a planning framework. For example, this Court has indicated that zoning changes that occur in a "haphazard or piecemeal" fashion may be found to be invalid. *Kozesnik v. Township of Montgomery,* 24 *N.J.* 154, 166, 131 *A.*2d 1 (1957); *see also Riggs v. Township of Long Beach,* 109 *N.J.* 601, 616, 538 *A.*2d 808 (1988) (noting that zoning ordinance inconsistent with master plan supports conclusion that ordinance was adopted for invalid purpose). Thus, the MLUL's requirement that any amendment to a zoning ordinance be reviewed in relation to the municipality's master plan should be understood not as a procedural nicety but rather as a mandatory and essential step to safeguard the validity of a proposed zoning amendment. Any deviation from the procedural framework established by the MLUL should be scrutinized closely to determine if it furthers the purposes of that Act.

When the New Jersey Constitution of 1844 was amended in 1927 to enable the Legislature to pass general laws authorizing municipalities to enact zoning ordinances, zoning and planning were considered related activities that could nevertheless be implemented separately. See Roger A. Cunningham, *Control of Land Use in New Jersey by Means of Zoning,* 14 *Rutgers L.Rev.* 37, 38–39 (1959). Accordingly, the Legislature enacted New Jersey's first zoning enabling statute, the Zoning Act of 1928, two years prior to the State's first planning enabling legislation, the Planning Act of 1930 (Planning Act). The Planning Act provided for the creation of municipal planning boards authorized to "make and adopt a master plan for the physical development of the municipality," *L.* 1930, *c.* 235, § 5, and to make recommendations to the local governing body regarding changes or additions to the official map of the municipality, *L.* 1930, *c.* 235, § 7.

In 1953, however, the relationship of municipal planning and zoning was expressly recognized when the Legislature combined the planning and zoning authority in the Municipal Planning Act (MPA), *L.* 1953, *c.* 433. Although the MPA altered the language concerning the establishment of master plans to make them permissive rather than mandatory, the Act strengthened the relationship between planning and zoning by requiring that municipal planning boards also serve as "zoning commissions," *L.* 1953, *c.* 433, § 8, which were authorized to "recommend the boundaries of the various districts and appropriate regulations to be enforced therein." *L.* 1948, *c.* 305, § 3. The Act reinforced the power granted to planning boards by earlier amendments enacted in 1948 that required municipal governing bodies to submit any amendment or change to the zoning ordinance to the planning board for its "approval, disapproval or suggestions." *L.* 1948, *c.* 305, § 4. In the case of an unfavorable report by the planning board, the governing body was required to approve the proposed amendment by a favorable two-thirds vote before the amendment became effective. *Ibid.; see* Roger A. Cunningham, *Control of Land Use in New Jersey under the 1953 Planning Statutes,* 15 *Rutgers L.Rev.* 1, 46 (1960).

Because the adoption of master plans was permissive under the MPA, some municipalities continued to enact zoning ordinances without having adopted master plans. In *Kozesnik, supra,* 24 *N.J.* at 164–66, 131 *A.*2d 1, Chief Justice Weintraub attempted to reconcile the permissive nature of master plans under the MPA with the statutory requirement that zoning regulations be adopted "in accordance with a comprehensive plan":

> No doubt good housekeeping would be served if a zoning ordinance followed and implemented a master plan, but the history of the subject dictated a different course. * * *
>
> * * * * * * * *
>
> * * * Our own decisions emphasize that [the function of a comprehensive plan] is to prevent a capricious exercise of the legislative power resulting in haphazard or piecemeal zoning. Without venturing an exact definition, it may be said for present purposes that "plan" connotes an integrated product of a rational process and "comprehensive" requires something beyond a piecemeal approach, both to be

revealed by the ordinance considered in relation to the physical facts and the purposes authorized by *R.S.* 40:55–32.

[*Id.* at 165–66, 131 *A.*2d 1 (citations omitted).]

In *Kozesnik,* the Court stressed the importance of a rational and deliberative approach to zoning that would examine a zoning proposal in the context of related planning objectives. However, it stopped short of requiring that zoning changes conform to a plan that would exist independently of the zoning ordinance itself. *Id.* at 166, 131 *A.*2d 1.

In 1975, the Legislature formally acknowledged the interdependence between planning and zoning by passing the MLUL, one of the primary purposes of which was "to achieve a better coordination of land use planning and regulation." *Statement of the Senate County and Municipal Government Committee on Senate Bill No. 3054* (1975). "[O]f particular importance [was] the requirement for a stricter conformity between the master plan, official map and zoning ordinances." *Id.* at 2. Discussing the heightened role of planning in the MLUL, Justice Handler noted in *Riggs, supra,* that

a prerequisite of the exercise of the zoning power by a municipality is the preparation and adoption of a master plan. *See N.J.S.A.* 40:55D–62. In addition, the envisioned master plan is a much more detailed, rigorous and systematic exercise in planning than that which sufficed under the old Planning Act * * *. A master plan under current law must include a statement of objectives and assumptions as well as a land use plan element and housing element. *N.J.S.A.* 40:55D–28b. The plan must also state its relationship to other potential plan elements, such as transportation, utilities, community facilities, recreation, environmental and energy conservation, and historic preservation. *See N.J.S.A.* 40:55D–28b(1)–(10).

[109 *N.J.* at 619–20, 538 *A.*2d 808 (Handler, J., concurring).]

Under the MLUL, the process by which a municipality enacts a zoning ordinance or a zoning amendment begins with the same procedure by which that municipality would adopt any other ordinance. See *N.J.S.A.* 40:49–2; William M. Cox, *New Jersey Zoning and Land Use Administration* § 34–1, at 498 (1994). However, additional requirements attend the adoption of zoning ordinances and amendments. A zoning ordinance may be adopted only after the planning board has adopted the land-use-plan and

housing-plan elements of a master plan. *N.J.S.A.* 40:55D–62a. Furthermore, to ensure that a proposed zoning amendment is consistent with the master plan, the governing body must refer the proposed amendment to the planning board for comment and report. *N.J.S.A.* 40:55D–64, –26a.

A planning board must evaluate a proposed zoning amendment in relation to its master plan. *N.J.S.A.* 40:55D–26a. If a municipality adopts an ordinance that is inconsistent with its current master plan, it must do so by a majority of the full authorized membership of the governing body and must set forth in a resolution reasons for the inconsistency. *N.J.S.A.* 40:55D–62a; *Riggs, supra,* 109 *N.J.* at 621, 538 *A.*2d 808. Compliance with the procedures established by the MLUL thus ensures that zoning changes occur in a manner consistent with the planning objectives of the community, as reflected by the master plan.

The MLUL also requires municipalities to engage in continued planning by calling for a periodic review of master plans. *N.J.S.A.* 40:55D–89; *see also Levin v. Township of Parsippany–Troy Hills,* 82 *N.J.* 174, 181 n. 3, 411 *A.*2d 704 (1980) ("[T]he legislative intent is that a municipality should reexamine its land use regulations periodically.") When revising its master plan, a municipality can examine its future development and planning needs and can make changes in the master plan to reflect those needs.

In enacting the MLUL, the Legislature also took into account the importance of public participation in the planning process. It established standards for public notification of meetings and hearings of the planning board, all of which are open to the public, *N.J.S.A.* 40:55D–9, and required public access to records relating to land-use proposals under review, including minutes of all regular meetings and hearings, *N.J.S.A.* 40:55D–10.

Since the adoption of the MLUL, this Court has "increasingly emphasized that planning, and not *ad hoc* decision-making, is the cornerstone of sound governmental policy in this area." *Kaufmann v. Planning Bd.,* 110 *N.J.* 551, 557, 542 *A.*2d 457 (1988). As

developed in case law that predates the MLUL, " '[t]he specific requirement of a "comprehensive plan" is intended to avoid an arbitrary, unreasonable, or capricious exercise of the zoning power[,]' and is thus a guarantee that the zoning power is used for the public good to secure reasonable neighborhood uniformity." *Riggs, supra,* 109 *N.J.* at 623–24, 538 *A.*2d 808 (quoting *Speakman v. Mayor of N. Plainfield,* 8 *N.J.* 250, 256, 84 *A.*2d 715 (1951)). Our concern that decisions affecting zoning be grounded in a thoughtful and rational decision-making process has been reflected in other areas of land use law as well. For example, regarding the review of variance applications, we have noted that "the key to sound municipal decision-making is a clear statement of reasons for the grant or denial of a variance." *Kaufmann, supra,* 110 *N.J.* at 566, 542 *A.*2d 457. Similarly, in *North Bergen Action Group v. Planning Board,* 122 *N.J.* 567, 585 *A.*2d 939 (1991), we emphasized: "Because zoning restrictions are enacted to further municipal planning and zoning objectives, it is fundamental that resolutions granting variances undertake to reconcile the deviation authorized by the Board with the municipality's objectives in establishing the restriction." *Id.* at 578, 585 *A.*2d 939.

B

The provision in the MLUL, *N.J.S.A.* 40:55D–62b (section 62b), that the Court interprets today is contained in the same statutory section that requires zoning changes or amendments to be "substantially consistent with" or "designed to effectuate" the land-use element of the master plan. See *N.J.S.A.* 40:55D–62a. The Court, however, ignores or overlooks the obvious significance of the placement of the anti-referendum provision within the same section requiring that zoning ordinances adhere to the master plan.

Section 62b states: "No zoning ordinance and no amendment or revision to any zoning ordinance shall be submitted to or adopted by initiative or referendum." The municipality argues that section 62b precludes the use of *binding* referenda but allows *non-*

*binding* referenda as a means of polling the public on a proposed zoning change, in accordance with *N.J.S.A.* 19:37–1. The purpose of non-binding referenda "is to encourage citizen interest and participation in municipal affairs." *Borough of Eatontown v. Danskin,* 121 *N.J.Super.* 68, 76, 296 *A.*2d 81 (Law Div.1972). Furthermore, non-binding referenda are considered "so obviously useful to those who are burdened with the duty of promoting the public welfare that a court should interfere only where a misuse is plain * * *." *Id.* at 75, 296 *A.*2d 81. The process for presenting a question to the public under *N.J.S.A.* 19:37–1 is straightforward. The governing body of a municipality must adopt an ordinance or a resolution requesting the county clerk to print on the ballots to be used at the next general election "a certain proposition to be formulated and expressed in the ordinance or resolution in concise form." *N.J.S.A.* 19:37–1. The request must be filed no later than seventy-four days prior to the election. *Ibid.*

## II

The majority concludes that the plain language of section 62b demonstrates that the Legislature did not intend to bar the submission of zoning ordinances or amendments to non-binding referenda. However, a careful reading of that provision reveals that the term "referendum" was intended to include both binding and non-binding referenda.

The plain language of the statute expressly prohibits zoning ordinances and amendments from being *"submitted* to *or adopted* by * * * referendum."* (emphasis added). Contrary to the majority's understanding that section 62b is directed only at binding referenda, because such referenda "review[ ] already-taken governmental action and constitute[ ] final voter acceptance or rejection of that action," *ante* at 145, 644 *A.*2d at 602, the Legislature's use of the term "submitted" demonstrates that it was not concerned solely with binding referenda. That the Legislature chose to bar the *submission,* as well as the *adoption,* of zoning proposals through referendum emphasizes the Legislature's intention to

insulate zoning ordinances or amendments from either binding or non-binding expressions of public opinion. Accordingly, by prohibiting the *submission* of zoning proposals to the referendum process, the Legislature effectively conveyed its intention to protect the carefully established statutory-review process for zoning ordinances from the influences of a non-binding public-opinion poll.

The majority's primary argument is that the common understanding of the term "referendum" includes "binding public actions only." *Ante* at 144, 644 *A.*2d at 602. Although *N.J.S.A.* 19:37–1 speaks of "submitting" a "question" to the legal voters of a municipality, that section is located within Subtitle 10 of the Elections Law, which is entitled "Nonbinding County or Municipal Referenda." See *N.J.S.A.* 19:37–1 to –5. This Court has used the terms "public question," "non-binding referendum," and "referendum question" interchangeably to refer to questions submitted to the voters under *N.J.S.A.* 19:37–1. *See AFL–CIO v. Board of Chosen Freeholders*, 121 *N.J.* 255, 259, 579 *A.*2d 1231 (1990) (describing *N.J.S.A.* 19:37–1 as "the non-binding referendum law"); *Board of Chosen Freeholders v. Szaferman*, 117 *N.J.* 94, 563 *A.*2d 1132 *passim* (1989) (describing question proposed for inclusion on ballot under *N.J.S.A.* 19:37–1 as "referendum question"); *see also Danskin, supra,* 121 *N.J.Super.* at 76, 296 *A.*2d 81 (describing question submitted under *N.J.S.A.* 19:37–1 as "referendum"). The majority's legalistic interpretation of the term "referendum" to include only binding expressions of public opinion is unrealistically restrictive and is contradicted by this Court's prior use and understanding of the term.

To the extent that the plain-language of section 62b may not be thought dispositive, the question remains whether the Legislature ever contemplated that non-binding referenda could be used as a mechanism to gauge public opinion on a zoning matter. *See State v. Galloway*, 133 *N.J.* 631, 658, 628 *A.*2d 735 (1993) ("When a statute has more than one possible meaning, courts must look beyond its literal language to determine the legislative intent.").

The MLUL represents the culmination of decades of efforts by land-use lawyers and municipal officials to establish a coherent and comprehensive land-use statute that adequately recognizes the importance of planning as a prerequisite for sound zoning. See Stephen Sussna, *The New Municipal Land Use Law*, 99 *N.J.L.J.* 81 (1976); *The Municipal Land Use Law, New Jersey Municipalities*, March 1976, at 6. The MLUL, for the first time, required municipalities to have the land-use and housing elements of the master plan in place before adopting any new zoning ordinances. In fact, the very section of the law that the Court today construes to permit submission of zoning ordinances and amendments to non-binding referenda is the same section that requires that such ordinances and amendments be adopted in accordance with the master plan. The Court's conclusion that the Legislature simultaneously decided, in the same section of the MLUL, to authorize submission of zoning amendments to public referenda while inextricably linking the zoning function with comprehensive planning is simply incongruous.

That the deliberative process established for reviewing zoning proposals under the MLUL is inconsistent with the non-binding referendum process is incontrovertible. Non-binding referenda condense complex issues into one-sentence questions that permit only a "yes" or "no" response. The extent to which voters considering those questions will be informed of the underlying planning issues that should guide decisions affecting zoning is obviously unknown. However, the *impact* of a non-binding referendum is clear. Public officials will be diverted from the required focus on planning principles and instead be encouraged to heed the expression of popular will. The Mayor of Point Pleasant effectively conceded the influence of the referendum at issue when he explained his reasons for not vetoing the zoning ordinance passed by the Borough Council. The Mayor observed: "The people have spoken." Carlos Sadovi, *Zoning Change Denies A & P Plan, Asbury Park Press*, Dec. 22, 1993, at C1.

Today the Court interprets a provision of the MLUL in the abstract, ignoring the long history of efforts to safeguard zoning from haphazard or politically-motivated decisions, a history to which this Court has contributed significantly. Were we faithful to that history, we would reverse the judgment of the Appellate Division.

HANDLER, J., joins in this dissent.

*For affirmance* —Justices CLIFFORD, POLLOCK, O'HERN and GARIBALDI—4.

*For reversal*—Justices HANDLER and STEIN—2.