907 A.2d 433

BOROUGH OF BOGOTA, PLAINTIFF–APPELLANT, v. KATHLEEN A. DONOVAN, BERGEN COUNTY CLERK, DEFENDANT–RE-SPONDENT, AND PATRICIA DICOSTANZO, SUPERINTEN-DENT OF THE BERGEN COUNTY BOARD OF ELECTIONS; PETER INCARDONE, JR., CHAIRPERSON OF THE BERGEN COUNTY BOARD OF ELECTIONS; AND THE BERGEN COUN-TY BOARD OF ELECTIONS, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued telephonically on an emergent appeal September 21, 2006—Decided October 2, 2006.

Before Judges WEFING, PARKER and C.S. FISHER.

*Andrew T. Fede,* argued the cause for appellant (*Herten, Burstein, Sheridan, Cevasco, Bottinelli, Litt & Harz,* attorneys).

*John M. Carbone,* argued the cause for respondent (*Carbone and Faasse,* attorneys).

The opinion of the court was delivered by

WEFING, P.J.A.D.

On August 17, 2006, the municipal council of the Borough of Bogota adopted a resolution calling for a non-binding referendum

to be held in connection with the general election scheduled to take place on November 7, 2006. The borough clerk submitted a copy of the resolution in a timely manner to the Bergen County Clerk with a request that the ballots to be used in Bogota include the following non-binding referendum:

Shall the Mayor and Council of the Borough of Bogota adopt an ordinance titled "The Borough of Bogota English Empowerment Ordinance" to read as follows:

A. The English language is the official language of the Borough of Bogota.

B. All official business of the Borough will be conducted in the English language absent compelling circumstances. All official documents, resolutions, ordinances, orders, and publications shall be printed in English and all official programs, meetings, transactions, and actions conducted by or on behalf of the Borough shall be in English.

C. Other languages may be used by the Borough's government officials and in official documents, whenever necessary to:

1. Protect the health, safety, or liberty of any citizen;

2. Teach or study other languages; and

3. Comply with any of the laws, rules, or regulations or the constitutions of the United States or the State of New Jersey.

YES _____ NO _____

Attached to this question was the following Explanatory Statement:

This question will ascertain the sentiment of the voters in the Borough on the question of whether the Borough's Mayor and Council should adopt an ordinance designating the English language as the official language of the Borough. The Borough is comprised of individuals from many ethnic, cultural, and linguistic backgrounds, and continues to benefit from this rich diversity. Throughout the history of the Borough and the United States, the English language has been the common thread binding individuals of differing backgrounds. Command of the English language is necessary to enable people to participate in and take full advantage of the opportunities afforded by American life. Absent a rudimentary command of the English language, citizens of this Borough are unable to make their voices heard in the legislative process, effectively exercise their right to vote, or fully understand the rights afforded to them by the United States and the New Jersey Constitutions. Citizens who do not have a command of the English language also have a more difficult time finding gainful employment, affordable housing, health insurance, and otherwise availing themselves of the full benefits of American life for themselves and for their families. Accordingly, the Mayor and Council of Bogota has (sic) found that the legal voters of the Borough of Bogota should be given ample opportunity to express their views on the question whether English should be the Borough's official language.

By letter dated August 25, 2006, defendant Kathleen A. Donovan, Clerk of the County of Bergen, advised the municipality that she was rejecting its request to include this non-binding referendum on the ballot because, in her view, it did not fit within the parameters of *N.J.S.A.* 19:37–1. On August 31, 2006, plaintiff filed a three-count complaint and named as defendants the Clerk and Patricia DiCostanzo, Superintendent of the Bergen County Board of Elections, Peter Incardone, Jr., Chairperson of the Bergen County Board of Elections, and the Bergen County Board of Elections.

The first and second counts, denominated as in lieu of prerogative writs and declaratory judgment, sought a judgment declaring null and void the County Clerk's refusal to include this non-binding referendum on the ballot, together with a directive ordering the County Clerk to take the necessary steps to include that question on the ballot for the November 7, 2006, election. The third count, denominated as seeking a preliminary injunction, sought to preliminarily enjoin defendants from doing anything to exclude this question from the ballot.

On September 15, 2006, the trial court heard oral argument and issued a written decision and order denying the request for a temporary injunction. The matter was presented to this court on an emergent basis in light of the fact that the ballots were scheduled to be submitted to the printer on September 25, 2006.

This court heard oral argument on September 21, 2006, by telephone, and on September 22, 2006, we issued an order that both granted leave to appeal and affirmed the order of the trial court. This opinion sets forth our reasons.

*N.J.S.A.* 19:37–1 provides:

When the governing body of any municipality or of any county desires to ascertain the sentiment of the legal voters of the municipality or county upon any question or policy pertaining to the government or internal affairs thereof, and there is no other statute by which the sentiment can be ascertained by the submission of such question to a vote of the electors in the municipality or county at any election to be held therein, the governing body may adopt at any regular meeting an ordinance or a resolution requesting the clerk of the county to print

upon the official ballots to be used at the next ensuing general election a certain proposition to be formulated and expressed in the ordinance or resolution in concise form. Such request shall be filed with the clerk of the county not later than 74 days previous to the election.

This statute provides "a method for municipalities and counties to determine their voters' views on proposed action within their governmental power, *i.e.*, their views on local governmental issues." *AFL–CIO v. Bergen County Bd. of Chosen Freeholders*, 121 *N.J.* 255, 258–59, 579 *A.*2d 1231 (1990). The statute does not permit a municipality or county to solicit the views of their voters on a question merely because it is one of public interest. Rather, "the public question on the ballot must relate to a matter within the power of the local government proposing it, something over which it can act." *Id.* at 259, 579 *A.*2d 1231. Thus in *AFL–CIO*, the Court held that a non-binding referendum question proposed for the ballot by several counties dealing with recently-enacted tax and school aid laws was impermissible under *N.J.S.A.* 19:37–1 because it dealt with subjects "committed solely to the state legislature." *Id.* at 260, 579 *A.*2d 1231.

[T]he scope of the referenda authorized by statute [is limited] to subjects actually encompassed within the specific jurisdictional powers of the county or municipality. Extended to its logical limits, this principle may generate close questions concerning the statute's application in specific instances. But we are confident that the legislature never intended the non-binding referendum process to be used to test public opinion in the abstract or to ascertain the public's views on controversial or timely issues outside the province of the governing body soliciting them.... Sentiment can only be asked for with respect to matters concerning or as to which the particular body *has the power to act.* Any broader interpretation would open the doors without any restriction and would lead to nothing but confusion and turmoil.

[*Bd. of Chosen Freeholders v. Szaferman*, 117 *N.J.* 94, 104, 563 *A.*2d 1132 (1989) (citations omitted) (holding impermissible a proposed non-binding county referendum on automobile-insurance regulation).]

Plaintiff Borough contends that the referendum question is permissible under the statute because it deals only with the internal business of the Borough. We are unable to agree; the business of government transcends municipal boundaries.

New Jersey is home to an increasingly diverse population. According to the 2000 census, while approximately 13% of our

State's population is of Hispanic background, nine municipalities within the State have a population that is more than 50% Hispanic, while forty-nine municipalities have a population that is more than 20% Hispanic. Further, according to this census, while 5.71% of our State's population is of Asian background, there are twelve municipalities whose Asian population is greater than 20% and one in which the Asian population is greater than 40%.

■ If we were to conclude that Bogota could adopt English as its official language, logic would require that another municipality in the State could pass a similar ordinance adopting another language as its official language. If one municipality were to adopt English as its official language, while another adopted Spanish and yet another Japanese, the wheels of government could come to a halt. In our judgment, passage of such an ordinance is not within the powers of a municipality.

There is no authority for Bogota to pass such an ordinance, not simply because as an agent of the State its power to pass ordinances is set by statute, *N.J.S.A.* 40:48–1 and –2, but more fundamentally, because no level of government is authorized to impose such constraints upon the manner in which free citizens communicate with one another and with their elected representatives.

We take our guidance from principles enunciated by the Supreme Court more than eighty years ago, in *Meyer v. Nebraska,* 262 *U.S.* 390, 43 *S.Ct.* 625, 67 *L.Ed.* 1042 (1923). In overturning the conviction of a teacher who had been found guilty of violating Nebraska's statute prohibiting the teaching of a foreign language to a child who had not passed the eighth grade, the Court stated:

> It is said the purpose of the legislation was to promote civic development by inhibiting training and education of the immature in foreign tongues and ideals before they could learn English and acquire American ideals; and "that the English language should be and become the mother tongue of all children reared in this State." It is also affirmed that the foreign-born population is very large, that certain communities commonly use foreign words, follow foreign leaders, move in a foreign atmosphere, and that the children are thereby hindered from becoming citizens of the most useful type and the public safety is imperiled.

> That the State may do much, go very far, indeed, in order to improve the quality of its citizens, physically, mentally and morally, is clear; but the individual has certain fundamental rights which must be respected. The protection of the Constitution extends to all—to those who speak other languages as well as to those born with English on the tongue. Perhaps it would be highly advantageous if all had ready understanding of our ordinary speech, but this cannot be coerced by methods which conflict with the Constitution, a desirable end cannot be promoted by prohibited means.
>
> [262 *U.S.* at 401, 43 *S.Ct.* at 627, 67 *L.Ed.* at 1046.]

As one commentator has stated, "What is really at stake is the right to be free from governmental interference in spheres involving fundamental freedoms." Leila Sadat Wexler, *Official English, Nationalism and Linguistic Terror: A French Lesson,* 71 *Wash. L.Rev.* 285, 292 (1996).

We need not enter the philosophical debate of whether diversity in language strengthens the fabric of a community or weakens its internal cohesion. That topic has received much attention of late, both from commentators and from judges. *See, e.g.,* Wexler, *supra,* 71 *Wash. L.Rev.* at 290 n. 12; *Ruiz v. Hull,* 191 *Ariz.* 441, 957 *P.*2d 984, 990–91 (1998). It is sufficient merely to conclude that the restrictions contained within this proposed ordinance cannot legally be sustained.

The order under review is affirmed.