NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0227-21

ASHISH KUMAR,
MICHAEL DIAFERIA,
JEFFREY REDRUP,
OZZY GUZMAN, and
MICHAEL CLARE
("EMS COMMITTEE
OF PETITIONERS"),

> Plaintiffs-Respondents/
> Cross-Appellants,

and

KAMUELA TILLMAN,
MINDY GOLDSTEIN,
JULIET PASTRAS,
LAURA LEIBOWITZ, and
STACI BERGER ("TAPE
COMMITTEE OF
PETITIONER"), and
PISCATAWAY PROGRESSIVE
DEMOCRATIC ORGANIZATION,

> Plaintiffs-Respondents/
> Cross-Appellants,

v.

PISCATAWAY TOWNSHIP
COUNCIL,

> Defendant-Appellant/
> Cross-Respondent,

APPROVED FOR PUBLICATION

August 23, 2022

APPELLATE DIVISION

and

NANCY PINKIN, in her capacity
as Middlesex County Clerk, and
MELISSA SEADER, in her
capacity as Piscataway Municipal
Clerk,[1]

     Defendants.

_____

Argued June 7, 2022 – Decided August 23, 2022

Before Judges Currier, DeAlmeida, and Smith (Judge Smith dissenting).

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5017-21.

Richard J. Mirra argued the cause for appellant/cross-respondent (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Richard J. Mirra, of counsel and on the briefs).

Renee Steinhagen argued the cause for respondents/cross-appellants (New Jersey Appleseed Public Interest Law Center, Inc., attorneys; Renee Steinhagen, on the brief).

The opinion of the court was delivered by

CURRIER, J.A.D.

_____

[1] Plaintiffs withdrew their claim against the municipal clerk prior to oral argument on the order to show cause.

In this matter, we consider whether a municipality may approve a resolution to place non-binding public opinion questions before the electorate when initiative petitions concerning the identical issues are on the same ballot. We conclude the municipality was not authorized under N.J.S.A. 19:37-1 to pass the resolutions regarding the public opinion questions because the electorate was considering the same issues on the ballot in their vote on the initiative questions. Therefore, we affirm the trial court's order which found the resolutions were invalid.

We also consider the trial court's order that denied plaintiffs' application for an award of attorney's fees under the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. Because defendants' actions of passing the unauthorized resolutions deprived plaintiffs of their substantive right to initiative, we reverse the court's order denying plaintiffs a counsel fee award.

I.

In July 2021, the EMS Committee of Petitioners filed the "Improving Township EMS Services Initiative Petition" with the Piscataway Township (Township) municipal clerk. The petition was a proposed draft ordinance addressing the lack of a unified emergency medical services system in the Township by creating a Division of Emergency Medical Services to coordinate services. A prior report, commissioned by the Township in 2012, had

concluded there was no unified system in the municipality and the current structure was not "delivering consistent services at adequate levels to give [Piscataway residents] a level of EMS response set out in industry standards." The petition included both a question to be placed on the November 2021 general election ballot and an interpretative statement. The question asked voters to determine whether a Division of Emergency Medical Services should be established.

A second group—the TAPE Committee of Petitioners—filed the "Transparency, Access and Public Engagement Initiative Petition" with the clerk. This petition was a proposed draft ordinance that would require the Township to record, broadcast, and/or stream the public portions of the Council, Planning and Zoning Board meetings on the Township's public access channel.[2] It included both a question to be placed on the November 2021 general election ballot and an interpretative statement.

During the August 10, 2021 Township Council meeting, the Township clerk, in accordance with N.J.S.A. 40:69A-187, filed certifications of sufficiency for both the EMS and TAPE Committees' petitions. In addition, as

---

[2] The petition also required the Township "to post all notices, agendas, recordings made under this [o]rdinance, and approved minutes of all Township meetings that are subject to the Open Public Meetings Act on the Township website."

A-0227-21

required under N.J.S.A. 40:69A-190, the proposed ordinances were placed on the agenda for a first reading and public hearing. The Council did not address or discuss the petitions or the interpretive statements and, it did not propose any amendments to the petitions. In fact, the Council did not take any action as to either petition.

Later, in the same meeting, the Council passed two resolutions on its consent agenda regarding public questions to be included on the November 2021 general election ballot. Resolution #21-306 authorized a public question that read, "Should the Township of Piscataway create a new Division of Emergency Medical Services when the cost of doing so is estimated to increase Piscataway property taxes by approximately $643,683.27 or will result in a reduction in current services to Piscataway residents."

Resolution #21-307 authorized a public question that read, "Should the Township of Piscataway broadcast its Township Council, Planning Board and Zoning Board meetings on PCTV and online when the cost of doing so is estimated to increase Piscataway property taxes by approximately $575,100.63 or will result in a reduction in current services to Piscataway residents." After the meeting, the Township provided plaintiffs with copies of the resolutions and the estimate of costs after plaintiffs requested the documents under the Open Public Records Act, N.J.S.A. 47:1A-1 to -13.

Pursuant to N.J.S.A. 40:69A-191, after the passage of twenty days and lack of action by the Council on the petitions, the Township clerk submitted the petitions and interpretative statements to the Middlesex County Clerk to be placed on the November 2021 general election ballot. The non-binding public questions were also submitted for the same ballot.

Thereafter, plaintiffs presented a verified complaint and order to show cause seeking injunctive relief. Plaintiffs alleged defendants' actions contravened N.J.S.A. 19:37-1 and violated

> their statutory rights of initiative by placing non-binding referenda addressing effectively the same policy proposals as [p]laintiffs' binding referenda on the November 2, 2021 General Election ballot, in a blatant attempt not to gauge the sentiment of the voters, but instead to sway them to reject [p]laintiffs' initiated ordinances.

Plaintiffs further alleged defendants violated N.J.S.A. 40:69A-184 to -204 because the Council failed "to perform its duty to adopt in substantially the same form, or formally reject, [p]laintiffs' proposed ordinances . . . and instead, . . . approve[d] two resolutions placing non-binding referenda on the ballot . . . ." Lastly, plaintiffs contended defendants' actions violated the CRA, entitling them to an award of attorney's fees and costs.

After hearing the parties' arguments, the court issued a lengthy oral decision. The court found the resolutions and the accompanying non-binding

public questions presented "the same or similar . . . 'question or policy' presented by the plaintiffs' petitions and initiated ordinances." Therefore, the Township Council had no authority to pass the resolutions and the non-binding public questions were "void ab initio as a matter of law."

The court noted the Council considered the initiatives and passed the resolutions at the same meeting with the intention of placing all four items on the general election ballot. The court found this conduct was "designed to scare the electorate against the binding initiative effort," and that the Council's resolutions "were conceived, designed, and adopted as a pretext and a subterfuge to sabotage and ultimately defeat the plaintiffs' petitions." The court stated it was up to the voters to decide, without improper influence by the Council, whether the proposed ordinances should become law. It also noted that the Township could submit a proposition for the repeal or amendment of the ordinances approved by the voters.

In turning to plaintiffs' application for counsel fees under the CRA, the court noted that "the denial of the right of initiative . . . [would] constitute a violation of the New Jersey Civil Rights Act, and thus would warrant an award of attorney's fees, under N.J.S.A. 10:6-2(c)." However, the court found that plaintiffs "were not denied their right of petition" because "their petitions and the proposed . . . ordinances were certified, and were transmitted . . . to the

A-0227-21

County Clerk." Therefore, plaintiffs' "rights were and are preserved and protected . . . by the initiated ordinances . . . as well as [the] injunctive relief . . . granted by . . . the [c]ourt in this action."

II.

On appeal, defendants contend the trial court erred in enjoining defendants from placing the non-binding public questions on the ballot. In a cross-appeal, plaintiffs assert the court erred in denying their request for counsel fees under the CRA.

Our review is de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("[I]nterpretation of the law and the consequences that flow from established facts are not entitled to any special deference.").

In our review of the issues, we initially considered whether the matter was moot as the November 2021 election took place and the voters passed both ordinances.[3] However, because plaintiffs still contend they are entitled to attorney's fees as the prevailing party on their civil rights claim, the matter is not moot. In order to determine whether plaintiffs were a prevailing party, we must find the right to initiative is a substantive right guaranteed by the Faulkner Act, N.J.S.A. 40:69A-1 to -210, and that the Township deprived

_____

[3] The Township has subsequently implemented both ordinances.

plaintiffs of that right. Therefore, we must consider both issues. See Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010) (stating an issue determined to be moot is nonjusticiable and as a result, courts will not normally render a decision on the issue).

A.

We begin then with a discussion of the applicable statutes. The Optional Municipal Charter Law, commonly known as the Faulkner Act, "was adopted in order to encourage public participation in municipal affairs in the face of normal apathy and lethargy in such matters." Sparta v. Spillane, 125 N.J. Super. 519, 523 (App. Div. 1973). The initiative provision should be "liberally construed." Id. at 523.

In forming its government under the Faulkner Act, the Township accorded its residents the rights of initiative and referendum. The right of initiative is delineated under N.J.S.A. 40:69A-184, which states: "The voters of any municipality may propose any ordinance and may adopt or reject the same at the polls, such power being known as the initiative." While the proper exercise of the right of initiative is binding on the local government, it is not without limitation. City of Ocean City v. Somerville, 403 N.J. Super. 345, 357 (App. Div. 2008). "[O]rdinances passed by initiative are subject to amendment

9

or repeal in the same manner that ordinances passed by the governing body of a municipality are." Id. at 357-58 (citing N.J.S.A. 40:48-1).

The second statute at issue here, N.J.S.A. 19:37-1, permits a local governing body to place non-binding public opinion questions before the electorate on a ballot. The statute provides:

> When the governing body of any municipality . . . desires to ascertain the sentiment of the legal voters of the municipality . . . upon any question or policy pertaining to the government or internal affairs thereof, and there is no other statute by which the sentiment can be ascertained by the submission of such question to a vote of the electors in the municipality . . . at any election to be held therein, the governing body may adopt at any regular meeting an ordinance or a resolution requesting the clerk of the county to print upon the official ballots to be used at the next ensuing general election a certain proposition to be formulated and expressed in the ordinance or resolution in concise form. Such request shall be filed with the clerk of the county not later than [eighty-one] days previous to the election.
>
> [N.J.S.A. 19:37-1 (emphasis added).]

The Township has never disputed the validity of the respective initiative petitions. The petitions were presented with the required number of signatories and the municipal clerk certified their sufficiency.

The sole issue then is whether the Township was authorized under N.J.S.A. 19:37-1 to place non-binding public questions concerning the identical issue on the same general election ballot as the petitions.

In interpreting a statute, courts must discern and effectuate the Legislature's intent. Meehan v. Antonellis, 226 N.J. 216, 232 (2016) (quoting Shelton v. Restaurant, Inc., 214 N.J. 419, 428-29 (2013)). The best indicator of that intent is the statutory language itself. DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). Therefore, we begin with the words of the statute and ascribe to them their ordinary meaning. Mason v. City of Hoboken, 196 N.J. 51, 68 (2008).

N.J.S.A. 19:37-1 provides "a method for municipalities and counties to determine their voters' views on proposed action within their governmental power, i.e., their views on local governmental issues." Borough of Bogota v. Donovan, 388 N.J. Super. 248, 252 (App. Div. 2006) (quoting N.J. State AFL-CIO v. Bergen Cnty. Bd. of Chosen Freeholders, 121 N.J. 255, 258-59 (1990)). As our Supreme Court has further stated, "N.J.S.A. 19:37-1 authorizes a governing body to ascertain public sentiment before that body acts. It provides a method to gauge public opinion, which the governing body may consider or ignore in determining an appropriate course of action." Great Atl. & Pac. Tea Co. v. Borough of Point Pleasant, 137 N.J. 136, 145 (1994). Contrary to our dissenting colleague's statement, we do not rely on "three words" of a statute but instead consider the entirety of N.J.S.A. 19:37-1 and the interpreting case law.

11

Importantly, the governing body may only approve a non-binding public question if "no other statute" can "ascertain the sentiment of the . . . voters of the municipality." N.J.S.A. 19:37-1. The Township cannot meet that proviso. The voters were already being asked to consider the creation of an EMS department and the recording/broadcasting of Township meetings through their votes on the petitions presented on the ballot in the general election. Those petitions were brought before the voters under the procedure established in N.J.S.A. 40:69A-184. Therefore, the public's sentiment regarding the issues set forth in the non-binding public questions would be ascertained during the general election by their votes on the petitions.

Plaintiffs properly presented the issues to the electorate though their use of the initiative process established in another statute, N.J.S.A. 40:69A-184. Therefore, the Township had no authority under N.J.S.A.19:37-1 to place non-binding questions on the same ballot regarding the identical issues.

The Township asserts that the questions sought public sentiment beyond the initiative petitions because they included information about estimated costs to the taxpayer regarding the petitions. In viewing the statutory provisions, "not in isolation but 'in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme,'" we see no intent in the legislative framework to support this argument. Tumpson v.

12

Farina, 218 N.J. 450, 467 (2014) (quoting Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012)).

After the petition was submitted to the Council, it had several options. The Council could pass the ordinance in the form requested. See N.J.S.A. 40:69A-191. The Council could also reject the ordinance or pass an alternative version of the ordinance on the same subject. And the Council could amend the interpretative statement to include its estimated costs. See Gormley v. Lan, 88 N.J. 26, 37 (1981). Instead, the Council took no action on the petitions; but accepted them as they read.

However, at the same meeting, the Council passed two resolutions authorizing the non-binding public questions. These questions were sent to the County Clerk to be included on the same election ballot as the petitions. This action was not sanctioned under the Faulkner Act. N.J.S.A. 19:37-1 does not permit the Township to directly address the binding initiative petitions through public opinion questions because the petitions, placed on the ballot through an approved procedure, are already gauging the public sentiment on the issues.

The questions in the Township's resolutions were not objectively balanced questions posed to the voters. To the contrary, they only highlighted potential costs to taxpayers if the initiatives were passed. The questions did not include any positive effect of the petitions. To permit questions phrased in

13

the manner as the Township did here, would completely undermine the purpose of the Faulkner Act and permit a governing body to defeat an initiative petition by only highlighting its negative effects, whether or not accurate, to the voters.

Moreover, the inclusion of both the petitions and the non-binding questions on the same ballot would cause confusion to a voter and have the potential to render contradictory results. If the voters passed the EMS Committee petition, they were approving an ordinance to create a new Division of Emergency Medical Services. However, on the same ballot, the voters could also vote "no" to the non-binding question on the same issue, due to a fear of higher taxes. But the ordinance was passed, rendering the non-binding question of no import. It would be illogical and confusing to include the petition and the non-binding question on the same ballot.

Because there was no statutory authority for the Township's actions in passing the resolutions approving the non-binding public questions, the trial court properly found the questions invalid and prohibited their inclusion on the November 2021 general election ballot.

### B.

We turn to plaintiffs' contentions regarding the court's denial of their requests for attorney's fees under the CRA, N.J.S.A. 10:6-2(f).

14

The CRA "is intended to provide the citizens of New Jersey with a State remedy for deprivation of or interference with the civil rights of an individual."  Tumpson, 218 N.J. at 473 (emphasis in original) (citation omitted).  In order to prevail on a claim under the CRA, a plaintiff must show that: (1) they have "been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State," or their "exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with," (2) "by threats, intimidation or coercion"; and (3) "by a person acting under color of law."  N.J.S.A. 10:6-2(c).  The Act "does not define substantive right, nor is the term self-explanatory."  Tumpson, 218 N.J. at 473.  A prevailing party under the Act is entitled to reasonable attorney's fees and costs.  Id. at 472 (quoting N.J.S.A. 10:6-2(f)).

In Tumpson, the Court held that the city clerk in the Faulkner Act municipality violated the plaintiffs' rights of referendum in refusing to accept for filing a petition for referendum.  218 N.J. at 457.  The Court found the refusal to accept the petition constituted a deprivation of a substantial right, entitling plaintiffs to an award of attorney's fees under the CRA.  Ibid.

15

Although <u>Tumpson</u> determined the denial of a referendum right violated the CRA, its analysis applies equally to initiative petitions. <u>See</u> <u>Fuhrman v. Mailander</u>, 466 N.J. Super. 572, 598 (App. Div. 2021). The Faulkner Act conferred the initiative petition right on plaintiffs and the Township's electorate. The Township attempted to deprive plaintiffs' assertion of their rights through the unauthorized use of non-binding public opinion questions. In order to achieve an unfettered consideration of their petitions, plaintiffs were compelled to seek a remedy through the court system. Because the Township's actions gave rise to a cause of action, the right of initiative is substantive in nature. <u>See</u> <u>Tumpson</u>, 218 N.J. at 478; <u>Harz v. Borough of Spring Lake</u>, 234 N.J. 317, 334 (2018).

In considering plaintiffs' application for attorney's fees, the trial court found that plaintiffs' substantive civil rights were not violated because the Township submitted their petitions to the county clerk for placement on the ballot and the court issued the requested injunctive relief blocking the inclusion of the non-binding public opinion questions on the same ballot.

However, this conclusion was a misapprehension of the law established under <u>Tumpson</u>. There, the Court considered the meaning of "deprivation" in the context of a deprivation of a substantive right. The Court looked to the definitions in Black's Law Dictionary and Webster's II New College

16

Dictionary, where "deprive" or "deprivation" was defined as "an act of taking away," "a withholding of something"[4] and "to keep from having or enjoying."[5] The Court found that "the [c]lerk's refusal to file their referendum petition took away, withheld, and kept plaintiffs from enjoying their right of referendum." Id. at 481. And, although the trial court later provided a judicial remedy in compelling the clerk to comply with the Faulkner Act and process the referendum petition, the Court held that did "not alter the nature of the [c]lerk's earlier act, which deprived plaintiffs of a statutory right." Ibid. "Judicial relief does not extinguish the earlier deprivation." Id. at 482.

Although the facts here differ from Tumpson, we nevertheless reach the same result regarding the issue of the deprivation of a substantive right. The Township's clerk did not violate the Faulkner Act. But the Township, through its Council, did violate the Act as discussed. And in doing so, the Township deprived plaintiffs of their right to petition when it included unauthorized non-binding questions on the same ballot as the petitions, preventing plaintiffs from having their petitions fully and fairly considered. Like Tumpson, plaintiffs were compelled to seek judicial intervention.

---

[4] Black's Law Dictionary 507 (9th ed. 2009).

[5] Webster's II New College Dictionary 305 (2001).

17

In issuing an injunction and preventing the inclusion of the non-binding questions on the ballot, the trial court altered the legal relationship between the parties. The court's order "modif[ied] the defendant[s'] behavior in a way that directly benefit[ted] . . . plaintiff[s]." Id. at 483 (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)). After the court granted an injunction, defendants could not place their non-binding questions on the ballot, and plaintiffs freely enjoyed their right of initiative. Put another way, but for the trial court's intervention, the non-binding questions would have been included on the ballot with the initiative petitions. Therefore, defendants' actions deprived plaintiffs of their right to initiative. See DeSanctis v. Borough of Belmar, 455 N.J. Super. 316, 334 (App. Div. 2018).

In enacting the CRA, and specifically N.J.S.A. 10:6-2(f), the Legislature implicitly acknowledged the difficulty a citizen might have in retaining competent counsel to litigate and preserve their substantive right to initiative. As the Tumpson court stated, it was

> unlikely that average citizens looking to participate in the democratic process could afford to litigate to enforce their substantive right of referendum . . . . With the attorney's fees provision of N.J.S.A. 10:6-2(f), citizens thwarted by official action denying them the benefit of a substantive statutory right have the ability to attract competent counsel.

> [218 N.J. at 480.]

18

Therefore, plaintiffs are entitled to an award of attorney's fees and costs under N.J.S.A. 10:6-2(f).

We affirm the portion of the court's order declaring the resolutions invalid and prohibiting the Council and county clerk from placing the non-binding question on the November 2021 general election ballot. We reverse and vacate the portion of the order denying plaintiffs' application for attorney's fees under N.J.S.A. 10:6-2(f). We remand the matter to the trial court for consideration of plaintiffs' fee application.

Affirmed in part, reversed, and vacated in part, and remanded to the court for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0227-21

**SMITH, J.A.D., dissenting.**

I respectfully disagree with the majority, and I would interpret N.J.S.A. 19:37-1 differently. In my view, the majority's interpretation of the statute improperly constrains, if not eliminates entirely, a municipal governing body's ability to place non-binding public opinion questions before their voters in a manner inconsistent with what our Legislature intended. I submit the Legislature intended a reading of N.J.S.A. 19:37-1 which permits it to work harmoniously with the voters' right to pass legislation by initiative under N.J.S.A. 40:69A-184.

Next, I find no evidence in the record to support the conclusion that defendants' non-binding resolution was identical to plaintiffs' initiative or somehow "misleading" to voters. Given that I would have interpreted N.J.S.A. 19:37-1 differently, I would not find plaintiffs a prevailing party, nor award counsel fees under the New Jersey Civil Rights Act.[6]

Our statutory construction jurisprudence provides a reliable road map. We review matters of statutory interpretation de novo. Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017). Our ultimate "task in statutory interpretation is to determine and effectuate the Legislature's intent." Bosland

---

[6] N.J.S.A. 10:6–2(f).

v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009).  Courts "look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." McGovern v. Rutgers, 211 N.J. 94, 108 (2012) (quoting Bosland, 197 N.J. at 553).

However, our review "is not limited to the words in a challenged provision."  State v. Twiggs, 233 N.J. 513, 532 (2018).  A court "'can also draw inferences based on the statute's overall structure and composition,' and may consider 'the entire legislative scheme of which [the statute] is a part.'" Ibid. (alteration in original) (citations omitted).  "We do not view [statutory] words and phrases in isolation but rather in their proper context and in relationship to other parts of [the] statute, so that meaning can be given to the whole of [the] enactment."  Id. at 533 (alterations in original) (quoting State v. Rangel, 213 N.J. 500, 509 (2013)).

Furthermore, "[t]he Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose."  State v. Federanko, 26 N.J. 119, 129 (1958) (citing Appeal of N.Y. State Realty & Terminal Co., 21 N.J. 90, 98-100 (1956)).

We review the operative language of N.J.S.A. 19:37-1 first. It is a method for municipalities to determine their voters' views on certain matters, see Borough of Bogota, 388 N.J. Super. at 252, and vests a municipal governing body with the ability "to ascertain the sentiment of the legal voters of the municipality . . . upon any question or policy pertaining to the government or internal affairs thereof . . . ." N.J.S.A. 19:37-1. As such, a non-binding resolution of the municipal body may appear on the next general election ballot pursuant to N.J.S.A. 19:37-1. Ballot questions under this statute are generally used to "gauge public opinion" before the municipality acts, and the municipality "may consider or ignore" such opinion "in determining an appropriate course of action." Great Atl. & Pac. Tea Co., 137 N.J. at 145.

N.J.S.A. 40:69A-184 gives voters the power to "propose any ordinance and . . . adopt or reject the same at the polls . . . ." If passed, the ordinances brought forward by the initiative process are binding on local government. Somerville, 403 N.J. Super. at 357.

The majority discerns the Legislature's intent by zeroing in on the plain language of the statute. They focus on N.J.S.A. 19:37-1's words "no other statute," and construe these three words expansively. In the majority's interpretation, these words do all of the work.

3                                                                                   A-0227-21

I submit that reading this phrase so broadly raises concerns. The majority's interpretation creates a mutual exclusivity between the two statutes which suggests that as long as N.J.S.A. 40:69A-184 is in effect, N.J.S.A. 19:37-1 has no legal meaning. If we extend the majority's interpretation to its logical conclusion and read the phrase "no other statute by which the sentiment can be ascertained" to bar a municipality from adding a ballot question if a separate statute exists that could ascertain this information, it becomes impossible for municipalities to add ballot questions under N.J.S.A. 19:37-1 due to the mere existence of any other statute which may achieve the same objective. Consider for a moment, circumstances in which voters are unaware of a pending issue, and that the municipality wants to bring the issue to their attention to ascertain their sentiment. The governing body would be precluded from doing so under the majority's reading of N.J.S.A. 19:37-1. I posit that it is unlikely that the Legislature envisioned such a restrictive interpretation of this phrase.

The majority's solution to this concern is narrowing the limiting phrase, "there is no other statute by which the sentiment can be ascertained[,]" to the facts, where the voters have already acted under N.J.S.A. 40:69A-184 and the voters' proposed ordinance is allegedly identical to the non-binding question the municipality seeks to raise. Limiting the holding to the facts of the case is

4

a sound way to frame the majority's holding, however, this approach makes a cudgel out of N.J.S.A. 40:69A-184, takes away from municipalities a power granted by the Legislature, and may well serve as a doorway to future litigation, perhaps starting with these very parties.  However, I respectfully submit that there is a different interpretation of the statute that permits N.J.S.A. 19:37-1 and N.J.S.A. 40:69A-184 to work in harmony.

I would not limit our review to three "words in a challenged provision." Twiggs, 233 N.J. at 532.  An interpretation more consistent with our case law on N.J.S.A. 19:37-1, can "draw inferences based on the statute's overall structure and composition."  Ibid.

The phrase "upon any question or policy pertaining to the government or internal affairs thereof" immediately precedes the three critical words. N.J.S.A. 19:37-1.  This phrase focuses a municipality's acts under the statute on matters within its sphere of influence, its own "government or internal affairs."  Conversely stated, this clause prevents a municipality from ascertaining public sentiment on matters outside its sphere of influence.  It follows, then, that "no other statute" likely refers to statutes within the municipality's purview, not the entire legislative code.

Viewing this constituent part of N.J.S.A. 19:37-1 in relation to the entire statute, a more "sensible meaning" emerges.  See Tumpson, 218 N.J. at 467.  If

5

there is no other statute under which a municipality can gauge public opinion on matters within its purview, the municipality can use its legislatively granted powers under N.J.S.A. 19:37-1 to add a non-binding question to the next ballot in order to ascertain this sentiment. This approach allows for taking words and phrases "in their proper context," and gives meaning "to the whole of [the] enactment." Twiggs, 233 N.J. at 533 (alterations in original) (quoting Rangel, 213 N.J. at 509). Under this construction a more plausible legislative purpose emerges: to ensure that a municipal governing body does not use its power to encroach upon the internal affairs of the State's other legislative creations.

Our courts have interpreted the "no other statute" language to limit municipalities' power to pass non-binding resolutions when those municipalities infringed upon other State-created municipal corporations.[7] Examples include boards of education and public utilities. The Legislature had an opportunity to amend the statute's language as recently as 2011. They declined to do so and elected to preserve it as is. See Federanko, 26 N.J. at 129.

---

[7] See, e.g., Town of Harrison Bd. of Educ. v. Netchert, 439 N.J. Super. 164, 179-85 (App. Div. 2014); Finkel v. Twp. Comm. of Twp. of Hopewell, 434 N.J. Super. 403, 318-26 (App. Div. 2013); Borough of Bogota, 388 N.J. Super. at 251-54; Great Atl. & Pac. Tea Co., 137 N.J. at 143-52.

A-0227-21

Interpreting the law this way allows both binding voter initiatives and non-binding municipal ballot questions to co-exist, even when the subject matter of the ballot actions is similar. I submit that doing so is not "illogical and confusing," as the majority suggests. In this scenario, voters are simply asked to resolve competing policy arguments, something they are entrusted to do every election.

The majority dismisses the Township's argument that the addition of cost estimates distinguishes the Township's assessment of public interest from that of the voter initiatives. The non-binding resolutions covered the identical subject matter as the ordinances, but the resolutions supplied the voters additional and different information, including cost estimates. The record shows nothing to support the trial court's conclusion that defendants' resolutions were misleading in relation to the initiatives. The municipal cost estimates were exactly what they purported to be, estimates. The reality that tax increases or budget trade-offs will accompany the adoption of ordinances calling for more staff, a new communication system, and construction and maintenance of a municipal website should come as a surprise to no one.

I also respectfully disagree with the majority's conclusion that placing the non-binding resolutions on the ballot in this matter can lead to inconsistent results. As suggested above, both public questions can logically co-exist on

7

the same ballot. That is because one is binding, while the other is non-binding. In this case, one would assess the public sentiment in adding services, while the other would gauge the public's appetite for spending taxpayer dollars in doing so.

Concerning counsel fees, I agree with the majority that plaintiffs have a substantive right which is protected under the CRA. However, I would have found for defendants and plaintiffs would not have prevailed. On this record, even with plaintiffs' success in keeping defendants' resolutions off the November ballot, I do not find plaintiffs a prevailing party. Defendants did not impede plaintiffs in any way, as their initiatives were placed on the November ballot without incident. Plaintiffs had no rights under N.J.S.A. 40:69A-184 which were impacted.

Plaintiffs went on the offensive with their action for injunctive relief, effectively "clearing the playing field" and using the courts to ensure that their legislation was placed before the voters without any information about what their proposals could cost taxpayers. While there are factual scenarios that may warrant award of counsel fees under the CRA to protect plaintiffs' right to pass legislation through initiative, a preemptive legal strike to suppress opposition at the ballot box is not one of them.

I respectfully dissent and would interpret N.J.S.A. 19:37-1 in a manner that allows it to "serve a useful and constructive purpose." Federanko, 26 N.J. at 129.

I would reverse the order of the trial court and enter judgment for defendants.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0227-21